565 So.2d 304 (1990)
Paul Alfred BROWN, Appellant,
v.
STATE of Florida, Appellee.
No. 70483.
Supreme Court of Florida.
March 22, 1990.
Rehearing Denied June 11, 1990.
*305 James Marion Moorman, Public Defender, and Douglas S. Connor, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Paul Alfred Brown appeals his conviction of first-degree murder and sentence of death.[1] We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution, and affirm both his conviction and sentence.
Around 1:30 a.m., March 20, 1986 two gunshots woke Barry and Gail Barlow. Upon entering the Florida room of their home they found Gail's seventeen-year-old sister, Pauline Cowell, dead in her bed. Pauline's friend, Tammy Bird, had also been shot, but was still alive. The room's outside door stood open, missing the padlock with which it had been secured. Pursuant to information indicating Brown might be a suspect, sheriff's deputies began searching for him in places he was known to frequent and found him hiding behind a shed in a trailer park where Brown's brother lived. They arrested Brown and seized a handgun, later linked to the shootings,[2] from his pants pocket.
Brown lived with the murder victim's mother, and the victim had only recently moved into her sister's home. Brown confessed after being arrested and, at the sheriff's office, stated that he had broken into the victim's room to talk with her about some "lies" she had been telling. Although he entered the room armed, Brown claimed that he had not intended to kill the girl, but that he planned to shoot her if she started "hollering."
The jury convicted Brown of armed burglary, first-degree murder, and attempted first-degree murder and recommended the death sentence. The trial court found that the mitigating evidence did not outweigh the aggravating circumstances and sentenced Brown to death.
As his first point on appeal, Brown claims that the detective who arrested him did not immediately advise him of his complete rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Specifically, he claims the detective failed to tell him that he could stop answering questions at any time. Therefore, Brown argues that his confessions should have been suppressed and that he should now be given a new trial.
At the suppression hearing the detective testified that, immediately upon apprehending him, the deputies directed Brown to lie on the ground, whereupon they removed the handgun from his pocket and handcuffed him. From memory the detective advised Brown of his rights, but did not tell Brown that he could cut off questioning at any time. Brown, however, appeared to understand his rights and immediately stated that he had committed a murder and an armed robbery.[3] Within minutes the deputies took Brown to a patrol car where the detective readvised him pursuant to Miranda from a printed rights card. He then arrested Brown for armed robbery and questioned him about the murder. Brown *306 confessed again on the ride to the sheriff's office. After again being read his Miranda rights from a printed card at the sheriff's office, Brown agreed to make another statement, but asked that it be recorded rather than written.
On cross-examination the detective said he initially told Brown he did not have to speak with him,[4] but that Brown said he wanted to talk. Brown testified that he could not remember ever being given the Miranda warnings.[5] The court held that Brown had confessed freely and voluntarily and that, even if a line of the Miranda warning had been omitted initially, the confessions would not be suppressed because Brown never tried to stop talking and never requested an attorney.
In Miranda the United States Supreme Court held that a person
taken into custody or otherwise deprived of his freedom by the authorities in any significant way . .. must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement.
384 U.S. at 478-79, 86 S.Ct. at 1630. The right to cut off questioning is implicit in the litany of rights which Miranda requires to be given to a person being questioned. It is not, however, among those that must be specifically communicated to such a person. The rights card which the detective used contained no mention of cutting off questioning, but, because Miranda does not require such a warning, the warnings given Brown were sufficient.
Miranda was designed to deter police coercion and to ensure that confessions are given freely and voluntarily. "The prophylactic Miranda warnings are `not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory incrimination [is] protected.'" Duckworth v. Eagan, ___ U.S. ___, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989), quoting Michigan v. Tucker, 417 U.S. 433, 444, 94 S.Ct. 2357, 2363, 41 L.Ed.2d 182 (1974). There is absolutely no indication of coercion in this case. The United States Supreme Court has held that
absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of Miranda warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement.
Oregon v. Elstad, 470 U.S. 298, 314, 105 S.Ct. 1285, 1295, 84 L.Ed.2d 222 (1985). Brown did not begin to talk until after being told his rights. In the absence of any coercion his claim that he had been without sleep and was exhausted does not overcome the voluntariness of his statement.[6]
Brown relies on Caso v. State, 524 So.2d 422, 425 (Fla.), cert. denied, 488 U.S. 870, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988), where we held "that the failure to advise a person in custody of the right to appointed counsel if indigent renders the custodial statements inadmissible in the prosecution's case-in-chief." Caso is distinguishable *307 because the detective told Brown at least three times that he could have appointed counsel if indigent. In Caso, however, we went on to state that Miranda violations are subject to a harmless error analysis. Even assuming that a technical Miranda violation occurred here, we find it harmless beyond any reasonable doubt. Within minutes of being given the allegedly incomplete list of his rights, Brown received them again in their entirety. Brown immediately began talking when apprehended and, apparently, never stopped. He also never requested an attorney, never asked that any questioning be stopped, and never refused to answer a question.
We therefore hold that the trial court did not err in refusing to suppress Brown's statements.
Brown also argues that the court erred in not excusing a prospective juror for cause, claiming that this person believed death the proper penalty for anyone convicted of premeditated murder unless mitigating circumstances existed. In Hill v. State, 477 So.2d 553, 556 (Fla. 1985), we stated: "When any reasonable doubt exists as to whether a juror possesses the state of mind necessary to render an impartial recommendation as to punishment, the juror must be excused for cause." Our review shows that the record does not support Brown's claim, but, rather, that this person would have been an impartial juror regarding the death penalty.[7] Therefore, we hold that the court did not err in refusing to excuse this prospective juror for cause.
As the last challenge to his conviction, Brown argues that the court erred in overruling defense counsel's objection to the standard jury instruction on reasonable doubt.[8] According to Brown the standard instruction dilutes the quantum of proof required to meet the reasonable doubt standard. We disagree. This Court has previously approved use of this standard instruction. In re Standard Jury Instructions (Criminal), 431 So.2d 594 (Fla.), as modified on other grounds, 431 So.2d 599 (Fla. 1981). See also Rotenberry v. State, 468 So.2d 971 (Fla. 1985), receded from on other grounds, Carawan v. State, 515 So.2d 161 (Fla. 1987); Williams v. State, 437 So.2d 133 (Fla. 1983), cert. denied, 466 U.S. 909, 104 S.Ct. 1690, 80 L.Ed.2d 164 (1984). The standard instruction, when read in its totality, adequately defines "reasonable doubt," and we find no merit to this point.
Turning to the sentencing portion of Brown's trial, the trial court found that *308 three aggravating circumstances had been established, i.e., committed during commission of a felony, previous conviction of a violent felony, and committed in a cold, calculated, and premeditated manner. The court found several items of evidence in mitigation (mental capacity, mental and emotional distress, social and economic disadvantage, nonviolent criminal past), but considered them of so little weight as not to outweigh even any one of the aggravating factors. Brown now claims that: 1) the court erred in instructing the jury; 2) a seven-to-five vote for the death penalty is statistically unreliable; 3) the standard instruction does not adequately define the cold, calculated, and premeditated aggravating circumstance; 4) the cold, calculated, and premeditated aggravating factor should not be found in his case; and 5) death is a disproportionate penalty here.
Several of Brown's arguments merit little discussion. In Alvord v. State, 322 So.2d 533 (Fla. 1975), cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976), we held that the jury's advisory recommendation as to sentence need not be unanimous and that a simple majority would suffice to recommend the death penalty. Brown's statistics do not convince us to rule otherwise.
We also find no merit to his argument about the trial court's rulings on the penalty phase instructions. Brown requested an instruction on the jury's role based on Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).[9] We have previously rejected this claim and approved the pertinent standard jury instruction, Combs v. State, 525 So.2d 853 (Fla. 1988); Grossman v. State, 525 So.2d 833 (Fla. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989), and refuse to reconsider it here. Brown also asked that the following language be stricken from the standard instruction: "If you are reasonably convinced that a mitigating circumstance exists, you may consider it established." Contrary to Brown's contention, we do not find that, on their totality, the standard instructions impermissibly put any particular burden of proof on capital defendants. Instructions which establish no guidance for the consideration of mitigating circumstances would activate the admonition against a procedure that would "not guide sentencing discretion but [would] totally unleash it." Lockett v. Ohio, 438 U.S. 586, 631, 98 S.Ct. 2954, 2975, 57 L.Ed.2d 973 (1978) (Rehnquist, J., concurring in part and dissenting in part).
Based on Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), Brown also argues that the standard instruction on the cold, calculated, and premeditated aggravating circumstance is unconstitutional. In Maynard the Court held the Oklahoma instruction on heinous, atrocious, and cruel unconstitutionally vague because it did not adequately define that aggravating factor for the sentencer (in Oklahoma, the jury). We have previously found Maynard inapposite to Florida's death penalty sentencing regarding this state's heinous, atrocious, and cruel aggravating factor. Smalley v. State, 546 So.2d 720 (Fla. 1989). We find Brown's attempt to transfer Maynard to this state and to a different aggravating factor misplaced. See Jones v. Dugger, 533 So.2d 290 (Fla. 1988); Daugherty v. State, 533 So.2d 287 (Fla. 1988). We therefore find no error regarding the penalty instructions.
Brown also challenges the trial court's finding the murder to have been committed in a cold, calculated, and premeditated manner. Although Brown told the authorities that he did not intend to kill the victim, he also said that he intended to shoot her if she made any noise. Moreover, Brown took boltcutters with him to the victim's home late at night, removed the padlock, returned the boltcutters to the car, and then entered the victim's room armed with a handgun. The psychologist who testified on Brown's behalf at sentencing admitted that Brown made a statement *309 to him indicating he had considered shooting the victim before going to her residence. The psychologist conceded that the homicide may well have been preplanned rather than impulsive. Remeta v. State, 522 So.2d 825 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 182, 102 L.Ed.2d 151 (1988); Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). The trial court characterized this killing as "nothing less than an execution." On the totality of the circumstances this case demonstrates the heightened premeditation necessary to finding the murder to have been committed in a cold, calculated, and premeditated manner.
There was mitigating evidence to the effect that Brown was under a severe mental strain at the time of the homicide, due, in part, to trying to support the mother of the victim and her children. His earning capacity was limited and there had been threats to his girlfriend from the Department of Health and Rehabilitative Services that she would lose the children if living conditions did not improve. His father and brother suggested that these factors contributed to Brown's actions and that it was out of character for him to act violently. The jury and the trial judge heard this testimony and it is apparent that the trial judge considered it in his weighing process.
We disagree with Brown's claim that the death penalty is disproportionate in this case. The trial judge found three valid aggravating circumstances which, after careful consideration, he concluded had not been overcome by the mitigating evidence.[10] Compared with other cases where the jury has recommended and the judge has imposed the death sentence, Brown's case warrants that penalty. Compare, e.g., Hudson v. State, 538 So.2d 829 (Fla. 1989) (death sentence affirmed, two valid aggravating factors with trial court giving little weight to mitigating evidence), cert. denied, ___ U.S. ___, 110 S.Ct. 212, 107 L.Ed.2d 165 (1989), with Smalley v. State, 546 So.2d 720 (Fla. 1989) (death sentence vacated, one valid aggravating factor, substantial and compelling mitigating evidence); Songer v. State, 544 So.2d 1010 (Fla. 1989) (death sentence vacated, one aggravating factor, more than three mitigating circumstances); Proffitt v. State, 510 So.2d 896 (Fla. 1987) (death sentence vacated, burglary without more in aggravation, no prior criminal history); Wilson v. State, 493 So.2d 1019 (Fla. 1986) (death sentence vacated, heated domestic confrontation).
We therefore affirm Brown's convictions and sentences.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW and GRIMES, JJ., concur.
BARKETT and KOGAN, JJ., concur in conviction, but dissent as to sentence only.
NOTES
[1] The jury also convicted Brown of armed burglary and attempted first-degree murder, for which the court sentenced him to consecutive terms of life imprisonment. Although Brown does not appeal those convictions and sentences, our review shows them to be supported by the record.
[2] Tests showed that bullets found at the murder scene had been fired from the handgun seized from Brown.
[3] While at the murder scene, the detective received notice of an armed robbery and shooting at a convenience store. The description of the robber matched the description of Brown that the detective had been given. He met with a supervisor and several deputies who discussed both crimes as well as the fact that Brown's car, containing both items taken in the robbery and boltcutters, which could have been used to remove the padlock from the victim's door, had been found. The robbery is not involved in this case.
[4] He told Brown this before warning him from memory when Brown was apprehended.
[5] Conversely, Brown also could not remember not being given his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[6] The United States Supreme Court "has never held that the psychological impact of voluntary disclosure of a guilty secret qualifies as state compulsion." Oregon v. Elstad, 470 U.S. 298, 312, 105 S.Ct. 1285, 1294, 84 L.Ed.2d 222 (1985). See also Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).
[7] The pertinent part of the voir dire reads as follows:

Mr. Benito [assistant state attorney]:
Correct me if I am wrong, yesterday you did not think that every first degree murder case warrants the death penalty, did you, sir?
Mr. Scalfari [prospective juror]: That's correct.
Mr. Benito: You are willing, if you are seated as a juror, to listen to all of the evidence, aggravating and mitigating circumstances, and if a man is found guilty, determine whether or not the death penalty should be imposed?
Mr. Scalfari: Yes, sir.
Mr. Benito: You're not going to think that if a man is convicted of first degree murder that he should get the death penalty, are you?
Mr. Scalfari: No, sir.
* * * * * *
[Mr. Chalu, defense counsel]: Mr. Scalfari, for example, if you find as a matter of fact that my client, Mr. Brown, did in fact commit a murder or a homicide, you would not automatically consider that to be first degree murder, would you?
Mr. Scalfari: No.
Mr. Chalu: All right. You would be capable of listening to the Judge's instruction about the different degrees of homicide and decide based on the facts and law given you by the Judge which type of homicide was the appropriate one?
Mr. Scalfari: Yes.
[8] The standard instruction on reasonable doubt, given at Brown's trial, reads as follows:

Whenever the words "reasonable doubt" are used you must consider the following:
A reasonable doubt is not a possible doubt, a speculative, imaginary or forced doubt. Such a doubt must not influence you to return a verdict of not guilty if you have an abiding conviction of guilt. On the other hand, if, after carefully considering, comparing and weighing all the evidence, there is not an abiding conviction of guilt, or, if, having a conviction, it is one which is not stable but one which wavers and vacillates, then the charge is not proved beyond every reasonable doubt and you must find the defendant not guilty because the doubt is reasonable.
[9] The requested instruction reads as follows: "The fact that your recommendation is advisory does not relieve you of your solemn responsibility for the Court is required to and will give great weight and serious consideration to your verdict in imposing sentence."
[10] The trial judge stated that even without the cold, calculated finding the remaining aggravating circumstances outweighed the mitigating.