COPE, J.
Jabbar Woods appeals his conviction for first degree murder, burglary, and theft. We affirm.
Defendant-appellant Woods argues that the trial court should have suppressed his confession as being involuntary. He contends that he was deprived of sleep for an extended period, and that his confession should be viewed as having been coerced.[1] The trial court conducted an evidentiary hearing at which three law enforcement officers testified, as well as the defendant. At the conclusion, the trial court made an explicit finding that the law enforcement officers were credible and that the defendant’s testimony was unworthy of belief. The trial court denied the motion to suppress.
By the officers’ account, the encounter with defendant began at 2 a.m. on December 5th, at which time he went to the police station. At 3:30 a.m. he was arrested for a misdemeanor and placed in a holding cell.
At 10:30 a.m., a homicide detective asked defendant to speak to him about a homicide to which defendant had been a witness. According to the detective, the defendant agreed. Although not a suspect, the defendant was given Miranda[2] warnings and waived his Miranda rights. He was interviewed through 4:00 p.m. and then agreed to go with the detective to the scene of the homicide. He then returned to the police station. Defendant made a formal statement, which was concluded at 6:15 p.m. By the defendant’s own account, the statement he gave was truthful and uncoerced.[3]
At approximately 8:00 p.m. the lead detective in the present case, Detective Gold-ston, met with defendant. He asked defendant how he was doing and defendant said that he was all right. The detective said that the defendant appeared alert and coherent. The detective explained that he was investigating the homicide of Donald Porter and that the defendant was a possible suspect. A codefendant and two witnesses had already identified defendant as having been a participant in the armed *812 robbery which had resulted in the death of the decedent, although another defendant had been the actual shooter. The defendant was again given Miranda warnings and executed a written waiver of his Miranda rights.
In questioning the defendant, the detective 'first established that the defendant knew each of the codefendents. Defendant subsequently admitted his involvement in the homicide and was placed under arrest at 11:50 p.m. on December 5.
A court reporter was not immediately available but arrived shortly after 5:00 a.m. The defendant remained in the interview room and there was some follow-up questioning in the meantime, notably, the defendant’s identification of the codefend-ants in a photo display at approximately 4:30 a.m.
The detective testified that there was no continuous questioning, and that frequently the detective would leave the interview room to verify information that the defendant had given. After the court reporter arrived, the defendant gave a statement and, when it was transcribed, made some corrections on it.
The defendant testified, among other things, that he had been awake since 7:00 a.m. on December 4. He stated that he had awakened at that hour because he had to be in court at 9:00 a.m. on December 4, on another case, and that he had not slept the rest of the day. Although defendant gave an account of his whereabouts the rest of December 4, he was unable to identify, witnesses who could substantiate his account. He testified that he had only had about three hours of sleep the preceding night.
The initial encounter with the police was, by the police account, at 2:00 a.m. on December 5. Defendant stated that after his arrest at 3:30 a.m. on December 5, he was unable to get any sleep while in the holding cell, and little sleep after he began talking with the detectives. The defendant testified that even when left alone in the interview room, frequently an officer would come in to wake him up when he attempted to sleep.
As already stated, the trial court made an explicit finding that the law enforcement officers were credible, and the defendant not credible, in their testimony. The officers testified that in both interview sessions the defendant appeared alert and coherent, agreed to the interviews, and never requested that the interviews cease. They also testified that there were lengthy breaks in the questioning when the detective would leave the room to verify information the defendant had given them. The defendant was taken to Burger King during the afternoon visit to the murder scene, and while in the interview room was given water, bathroom breaks, and cigarettes. By the defendant’s own account, the statement he gave at 6:15 p.m. as a witness to the unrelated homicide was truthful and uncoerced. The judge also noted that the defendant had had a year of college, was well spoken, and by virtue of his prior record, was familiar with the criminal justice system. The confession to the instant crime came within approximately three hours after Detective Gold-ston began his interview, and defendant was arrested at 11:50 p.m., although the formal written statement was not executed by the defendant until the following morning,
On this evidence, and given the trial court’s credibility determination, we see no basis on which to overturn the trial court’s determination of voluntariness. See Brown v. State, 565 So.2d 304, 306 (Fla.1990) (“In the absence of any coercion his claim that he had been without sleep and was exhausted does not overcome the vol-untariness of his statement.”) (footnote omitted), abrogated in part on other grounds, Jackson v. State, 648 So.2d 85, 88 (Fla.1994). Defendant argues that reversal is mandated by Ashcraft v. Tennessee, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192 (1944) and Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1940), but *813 plainly the present case does not involve the continuous relay questioning involved in those cases, nor does it involve the length of continuous questioning involved in either of those cases. Here the defendant’s initial encounter with the police was at 2;00 a.m. on December 5, and his oral confession and arrest occurred at 11:50 p.m. the same day, after approximately three hours of questioning by Detective Goldston.
Defendant next contends that his confession is the product of an illegal arrest. The trial court rejected this argument and we agree. The evidence believed by the trial court would indicate that this was initially a consensual encounter, followed by a lawful misdemeanor arrest. The court ruled alternatively that in any event there was probable cause to arrest the defendant for first degree murder, based on the fact that one of the other perpetrators, and two witnesses, had prior to December 5 already specifically identified the defendant as a participant in the armed robbery and felony murder. Under either analysis, there was no illegal seizure of the person of the defendant. See Voorhees v. State, 699 So.2d 602, 609 (Fla.1997).
Defendant finally contends that the confession must be suppressed because he was not taken before a magistrate to have a bond hearing within twenty-four hours after his arrest on the misdemeanor charge of giving false information, the charge initially made against defendant at 3:30 a.m. on December 5. We reject that argument on authority of Keen v. State, 504 So.2d 396 (Fla.1987), disapproved in part on other grounds, Owen v. State, 596 So.2d 985, 990 (Fla.1992). “[Wjhen a defendant has been advised of his rights and makes an otherwise voluntary statement, the delay in following the strictures of the rule must be shown to have induced the confession.” Keen, 504 So.2d at 400 (citations omitted). After hearing the evidence the trial court rejected defendant’s argument on this point as well, and we see no error.
Affirmed.

.He also argued in the trial court, that the confession was the product of certain promises made by law enforcement officers. The trial court rejected this contention and defendant does not complain of any error in this respect on appeal.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. The defendant testified that he had objected to meeting with the detective at all, while the detective testified that defendant consented.