No. 85–6964. BUNDY *v.* FLORIDA. Sup. Ct. Fla. Certiorari denied. 

JUSTICE BRENNAN, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976), I would grant certiorari and vacate the death sentence in this case.

JUSTICE MARSHALL, dissenting.

Petitioner was convicted of first-degree murder and sentenced to death. His conviction was based on evidence the Florida Supreme Court found constitutionally suspect. The Florida Supreme Court nonetheless concluded that admission of the evidence was harmless constitutional error. I would grant certiorari to review the Florida Supreme Court's application of *Schneble* v. *Florida*, 405 U. S. 427 (1972), and *Fahy* v. *Connecticut*, 375 U. S. 85 (1963).

---

## I

Petitioner became a suspect in the disappearance of Kimberly Leach after local authorities learned that he was suspected in a number of murders in the northwestern United States. Leach was reported missing from school on February 9, 1978, and her body was found two months later, after a highly publicized search. The only eyewitness to the abduction was Clarence Anderson. He came forward on July 18, after seeing petitioner on a television newscast. At that time, Anderson was unable to identify the date of his observation, although he thought it was "around April," and he could not provide a detailed description of the man or the girl he had observed. App. to Pet. for Cert. A17–A21. At the request of the Assistant State Attorney, Anderson underwent *two* hypnotic sessions designed to refresh his recollection.

Petitioner moved to suppress Anderson's testimony due to the lapse of time between Leach's disappearance and his initial statement, the massive publicity surrounding her disappearance and petitioner's arrest and indictment, and an alleged misuse of hypnosis by the persons conducting the sessions. He maintained that these factors rendered Anderson's identification unreliable under the rule established by this Court's decision in *Neil* v. *Biggers*, 409 U. S. 188 (1972). At the suppression hearing, several experts testified that a witness whose recollection has been hypnotically refreshed is unable to distinguish between what he recollected before hypnosis and any "details" added during hypnosis.

The trial court denied petitioner's motion to suppress. At trial, Anderson testified that he had observed a man leading a young girl into a white van near Leach's junior high school on February 9, 1978. He identified the man as petitioner and the girl as Kimberly Leach. Anderson's testimony was vital to the State's case; it supplied "the crucial link in the chain of circumstantial evidence of [petitioner's] guilt." 471 So. 2d 9, 23 (Fla. 1985) (Boyd, C. J., concurring specially).

On appeal, the Florida Supreme Court agreed with petitioner's arguments against the use of hypnotically refreshed testimony. *Id.*, at 18. The court noted that the highest courts of several other States have categorically excluded hypnotically refreshed testimony. *E. g., People* v. *Shirley*, 31 Cal. 3d 18, 641 P. 2d 775, cert. denied, 458 U. S. 1125 (1982); *People* v. *Gonzales*, 415 Mich. 615, 329 N. W. 2d 743 (1982). The court discussed several of the problems associated with such testimony, not the least of which is

its effect on the defendant's right under the Confrontation Clause of the Sixth Amendment to cross-examine witnesses against him. The Florida court noted the "'danger of distortion, delusion, or fantasy,'" as well as "'the barriers which hypnosis raises to effective cross-examination.'" 471 So. 2d, at 18 (quoting *People* v. *Gonzales, supra,* at 627, 329 N. W. 2d, at 748). Furthermore, the court recognized the danger that, after undergoing hypnosis,

> "the subject (1) will lose his critical judgment and begin to credit 'memories' that were formerly viewed as unreliable, (2) will confuse actual recall with confabulation and will be unable to distinguish between the two, and (3) will exhibit an unwarranted confidence in the validity of his ensuing recollection." 471 So. 2d, at 17 (quoting *People* v. *Shirley, supra,* at 39, 641 P. 2d, at 787).

The Florida Supreme Court concluded, in a holding to which it gave only prospective effect, that "hypnotically refreshed testimony is *per se* inadmissible in a criminal trial in this state, but hypnosis does not render a witness incompetent to testify to those facts demonstrably recalled prior to hypnosis." 471 So. 2d, at 18.

## II

Since petitioner was convicted and sentenced to death after a trial in which the "crucial link" was supplied by a witness with extremely limited prehypnotic memory who had undergone *two* hypnotic sessions, the Florida Supreme Court should have overturned his conviction. Instead, the court somehow determined that Anderson's testimony was refreshed under hypnosis as to *only three details:* the color of the football jersey the girl was wearing, the numbers on the jersey, and the fact that the man was wearing a pullover sweater and a shirt. Then, purporting to apply the "harmless-constitutional-error rule" of *Schneble* v. *Florida,* 405 U. S. 427 (1972), and *Fahy* v. *Connecticut,* 375 U. S. 85 (1963), the court concluded: "[S]ufficient evidence does exist, absent the tainted testimony, upon which the jury could have based its conviction of Bundy. There is no reasonable possibility that the tainted testimony complained of might have contributed to the conviction." 471 So. 2d, at 19.

This review for harmless constitutional error is seriously flawed. First, the Florida court improperly based its enumeration of tainted testimony on *Anderson's own testimony at trial.*

App. to Pet. for Cert. A86–A87. Anderson's own assessment of the impact of hypnosis on his recollection was inherently unreliable and was not subject to effective cross-examination, for the very reasons the court relied upon in holding that such evidence would in the future be inadmissible. The hypnotically refreshed "recollection" of the precise date of his observation is the most glaring omission from Anderson's list.[1] Having identified constitutional error in the admission of hypnotically refreshed testimony, the Florida Supreme Court was not free to excise a fraction of that evidence and conclude that the rest could not have contributed to the conviction. Second, the Florida court evidently confused review for harmless constitutional error with review for sufficiency of the evidence, despite this Court's explanation of the difference in *Fahy:* "We are not concerned here with whether there was sufficient evidence on which the petitioner could have been convicted without the evidence complained of. The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." 375 U. S., at 86–87. Cf. *Delaware* v. *Van Arsdall*, 475 U. S. 673, 684 (1986); *Chapman* v. *California*, 386 U. S. 18, 23 (1967). When the evidence admitted at petitioner's trial is reviewed in this light it becomes clear that the tainted testimony significantly bolstered the State's case against him, for the untainted evidence was far from overwhelming.

"We must recognize that harmless-error rules can work very unfair and mischievous results when, for example, highly important and persuasive evidence . . . though legally forbidden, finds its way into a trial in which the question of guilt or innocence is a close one." *Id.,* at 22. Because the Florida Supreme Court misapplied the harmless-constitutional-error rule in such a way as to

---

[1] One of petitioner's experts testified at the pretrial suppression hearing that Anderson's testimony was "enhanced" by numerous details in addition to the date of the occurrence and the three items listed by Anderson. These enhancements included what Anderson was doing on that day, the man's weight, the fact that he was clean shaven, the description of the van, and the fact that he could see the man and the girl through its rear window. Pet. for Cert. 12. The court below evidently ignored this portion of the record in reaching its conclusion as to harmless error.

place in doubt the reliability of a verdict in a capital case, I would grant the petition for certiorari.[2]

---

[2] Since the Florida Supreme Court found constitutional error and the State has not cross-petitioned for certiorari on that question, this Court is not called upon to decide whether admission of hypnotically refreshed testimony in a criminal trial violates the Due Process Clause of the Fourteenth Amendment or the Confrontation Clause of the Sixth Amendment. Accordingly, I express no view on this question.