568 So.2d 1263 (1990)
Fred Lewis WAY, Petitioner,
v.
Richard L. DUGGER, etc., Respondent.
Fred Lewis Way, Appellant,
v.
STATE of Florida, Appellee.
Nos. 72201, 73649.
Supreme Court of Florida.
September 6, 1990.
Rehearing Denied November 27, 1990.
*1264 Larry Helm Spalding, Capital Collateral Representative, Billy H. Nolas, Chief Asst. CCR, and Martin J. McClain, Staff Atty., Office of the Capital Collateral Representative, Tallahassee, for petitioner/appellant.
Robert A. Butterworth, Atty. Gen., and Peggy A. Quince and Robert J. Krauss, Asst. Attys. Gen., Tampa, for respondent/appellee.
PER CURIAM.
Fred Lewis Way, a state prisoner under a sentence of death, petitions this Court for a writ of habeas corpus (No. 72,201) and appeals from the denial of his motion for postconviction relief filed pursuant to rule 3.850, Florida Rules of Criminal Procedure. We have jurisdiction. Art. V, § 3(b)(1), (9), Fla. Const.
Way was indicted in connection with the killings of his wife, Carol, and his daughter, Adrienne. The state presented evidence that Way, who was having marital difficulties, argued with his wife in the garage of their Tampa home, ultimately striking her in the head with a hammer. He called Adrienne into the garage and also struck her in the head with a hammer. He then set both mother and daughter, and the garage, on fire. The medical examiner testified that either the blows to the head or the fire could have caused the deaths. The jury, rejecting Way's defense that the mother and daughter were killed while engaged in mutual combat, found him guilty of second-degree murder in the killing of Carol Way but of first-degree murder for the killing of Adrienne. The jury recommended the death penalty; the trial judge imposed it; and this Court affirmed the judgment and sentence.[1]
Way raises a number of issues regarding both the guilt and penalty phases of his trial, but only two merit discussion.
Way argues that the trial testimony of his surviving daughter, Tiffany, was unreliable because it was induced by hypnosis and that trial counsel was ineffective in failing to seek to exclude it. In support of this assertion, Way notes that the statements Tiffany gave to police on the day of the killings and the day after differed materially from her testimony at trial. Because a hypnosis session preceded the trial *1265 testimony, Way attributes the differences to the hypnosis.
Hypnotically induced testimony is per se inadmissible today in the courts of Florida. In Bundy v. State, 471 So.2d 9 (Fla. 1985), cert. denied, 479 U.S. 894, 107 S.Ct. 295, 93 L.Ed.2d 269 (1986), this Court declared that testimony by a witness whose memory has been refreshed by hypnosis is inadmissible because it is unreliable. At the same time, we recognized an important exception: A hypnotized witness does not become incompetent and, in fact, can "testify to all events other than the new matter discovered at the hypnotic session." Id. at 19.
Under the facts of this case there was no ineffective assistance of counsel for failing to seek to exclude Tiffany Way's testimony. It should be noted that Bundy had not yet been decided at the time of Way's trial, so his counsel did not have the benefit of that decision. Furthermore, the record does not demonstrate that Tiffany Way's testimony at trial was induced or refreshed by hypnosis.
Tiffany Way gave five statements. The first two were given to police shortly after the killings. Both times she said she heard her mother and her sister in the garage but that her father was not there. She heard Carol and Adrienne arguing and then saw a flaming, rusty can rolling through the garage. At a deposition given in October, she said Adrienne had not been in the garage and there had been no argument between her and Carol. It was her mother and father who were in the garage, and she and Adrienne were playing a game in her room. Her father called Adrienne to the garage, and a few moments later Tiffany heard screaming and saw the garage on fire. At the hypnosis session, some nine days later, she told much the same story as at the deposition, although in more detail. In December, she testified at the trial and told essentially the same story as she had at deposition.[2] The one major difference came in this exchange on direct examination:
Q  Why did you tell the detectives that you heard your mother and your sister arguing?
A  Because that is what my dad had said and I didn't want my dad to get in trouble.
Had it come out in the hypnosis session that Tiffany's original account was designed to be consistent with her father's version of events in order to protect him, that part of the testimony would not have been admissible under Bundy. However, Tiffany did not make this statement in the hypnosis session, which did not venture into the discrepancies between her earlier and later statements. Indeed, her trial testimony is more like her deposition testimony than it is like the account she gave while under hypnosis.
Even if Tiffany's testimony with respect to why she changed her statement were deemed to be the result of the hypnotic session, measured by the Bundy standard for convictions which were in the appeal process when that case was decided,[3] Way's conviction would still have been affirmed. If Tiffany's reason for changing *1266 her statements were excluded, there was more than sufficient evidence to uphold the conviction, not the least of which was that Way was seen disposing of a hammer late in the day of the killings. In order to accept Way's version of events, one would have to conclude that Adrienne and her mother hit each other over the head simultaneously and fell into different portions of the garage, after which the garage was set on fire.[4]
Way also argues that he is entitled to relief because the jury instructions in the penalty phase were improper. Specifically, he points out that the jury was not told that it could consider in mitigation any other aspect of Way's character or record or any other circumstance of the offense.[5] It was error not to give this instruction,[6]Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), though that error is subject to a harmless error analysis. Delap v. Dugger, 513 So.2d 659 (Fla. 1987).
In this instance, we are not convinced that the error was harmless beyond a reasonable doubt. See Floyd v. State, 497 So.2d 1211 (Fla. 1986). At the outset, it should be noted that the jury only voted seven to five to recommend death. Furthermore, there was considerable nonstatutory evidence introduced. Indeed, in the order denying the motion for postconviction relief, the judge pointed out that the jury had heard evidence which revealed the following important facts about Way:
1. The Defendant's father died when the Defendant was young, the Defendant's mother lived on social security and suffered debilitating medical problems and the Defendant had eight brothers and sisters.
2. The Defendant was an extremely loving and caring father and husband who spent much time with his wife and children and has resolved certain marital problems he was having with his wife prior to her death.
3. The Defendant had served his country in the United States Air Force.
4. The Defendant was active in various social and civic organizations.
5. The Defendant was an extremely hard working, trustworthy and honest employee of the Federal Aviation Administration and his job responsibility involved the safety of people's lives. Moreover, the Defendant was characterized as an excellent teacher and instructor.
6. The Defendant had an excellent reputation for honesty and peacefulness. Furthermore, the Defendant's reputation in the highly competitive area of the Federal Aviation Administration was unexcelled and his opportunity for continued advancement in that organization was good.
7. The Defendant's general educational and employment background, including his advancement in his profession, was presented in extreme detail.
8. The Defendant suffered an impairment of his hearing which had not been medically corrected.

*1267 9. The Defendant was emotionally distraught after the death of his wife and daughter.
10. The Defendant was thirty-eight years of age and had no prior criminal history.
(Citations to transcript omitted.)
While reasonable persons might disagree with the weight to be accorded to the foregoing facts or whether some of them are even mitigating, we cannot be certain that had the jury been properly instructed, one additional juror would not have voted for life. Even assuming that the trial judge was aware that nonstatutory mitigating evidence could be considered, if the jury had recommended life imprisonment, Tedder[7] might have mandated a different result.
Therefore, we affirm the denial of Way's motion for postconviction relief. We grant the writ of habeas corpus to the extent that we vacate the sentence of death[8] and remand to the trial court for a new sentencing hearing before a jury. We deny the balance of the petition for habeas corpus.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, EHRLICH, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Way v. State, 496 So.2d 126 (Fla. 1986). When Way's death warrant was signed in 1988, the trial court granted a stay of execution in order to hold an evidentiary hearing on his motion for postconviction relief. Disposition of the habeas corpus petition was stayed pending the outcome of that hearing.
[2] In summary, the different accounts were as follows. Police statement: Tiffany said her father told Adrienne to go to the garage and help her mother. Later, she heard her mother and her sister arguing in the garage. She then saw a rusty, flaming can rolling down the side of the garage, of which she had a limited view under a partially raised door. She ran through the house toward the garage, where her father told her not to go through the garage door. She asked him if she should call the fire department, got no reply, found the family dog, and ran to a neighbor's house where she called the fire department. Her father, she said, had not been in the garage with her mother and sister.

Deposition, hypnosis and trial statement: Tiffany said she heard no argument between her mother and her sister. She and her sister had been playing a game in her room while her mother and father were in the garage. Her father called for Adrienne to come into the garage but told Tiffany to stay in the room. She then heard Adrienne screaming and looked up to see the flaming can. Her father walked past her room and winked at her before going into a bathroom briefly and then going out onto the patio; he was smoking a cigarette. Upon hearing another scream, Tiffany ran to the garage but could not open the door. Her father told her not to open the door. When she asked if he wanted her to call the fire department, he did not answer. She then took the dog and went to the neighbor's and called the fire department.
[3] Way's conviction was on appeal when Bundy v. State, 471 So.2d 9 (Fla. 1985), cert. denied, 479 U.S. 894, 107 S.Ct. 295, 93 L.Ed.2d 269 (1986), was decided. In Bundy, this Court said:

We further hold that any conviction presently in the appeals process in which there was hypnotically refreshed testimony will be examined on a case-by-case basis to determine if there was sufficient evidence, excluding the tainted testimony, to uphold the conviction. We believe this holding balances the competing interests and is the most equitable place to draw the line.
Id. at 18-19.
[4] We also reject Way's other claims of ineffectiveness of trial and appellate counsel concerning the guilt phase of the trial as well as the constitutional argument on hypnotic testimony, and the claims with respect to inflammatory photographs, the felony murder instruction, and the exclusion of Dr. Merin's testimony.
[5] The entire instruction on mitigating circumstances was as follows:

Among the mitigating circumstances you may consider, if established by the evidence, are:
1. The defendant has no significant history of prior criminal activity.
[6] There was no objection to the faulty instruction, and the issue was not raised on appeal. However, in view of our disposition of the case, we do not reach the claims of ineffective assistance of trial or appellate counsel on this point, nor do we reach the other claims regarding sentencing.
[7] Tedder v. State, 322 So.2d 908 (Fla. 1975).
[8] All claims under Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), asserted after May 11, 1989, must be raised in motions for postconviction relief. Hall v. State, 541 So.2d 1125 (Fla. 1989). However, Way's petition for habeas corpus which contained this claim was filed before that date.