648 So.2d 85 (1994)
Andrea Hicks JACKSON, Appellant,
v.
STATE of Florida, Appellee.
No. 79509.
Supreme Court of Florida.
April 21, 1994.
Order Denying Rehearing October 13, 1994.
*86 Nancy A. Daniels, Public Defender, and W.C. McLain, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Andrea Hicks Jackson appeals her death sentence.[1] Jackson was convicted of the 1983 first-degree murder of a Jacksonville police officer and sentenced to death. The conviction and sentence were affirmed by this Court on direct appeal. Jackson v. State, 498 So.2d 406 (Fla. 1986), cert. denied, 483 U.S. 1010, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987). After a death warrant was signed in 1989, Jackson filed a rule 3.850 motion with the trial court and a petition for writ of habeas corpus with this Court. We found merit to Jackson's Booth[2] claim, vacated the death sentence, and remanded for a new sentencing proceeding before a new jury. Jackson v. Dugger, 547 So.2d 1197 (Fla. 1989).
According to the testimony presented at the resentencing hearing, Jackson was seen vandalizing her own car. Officers Bevel and Griffin responded separately to the disturbance call. Jackson told the officers that someone had "busted out" the windows in her car but failed to inform the officers she was responsible for the damage. At the officers' request, Jackson went upstairs to her estranged husband's apartment and got her registration. Officer Griffin then left Officer Bevel to write the police report. Jackson sat in the police car with Officer Bevel while he wrote the report. The report, which was later found in the patrol car, stated that Officer Bevel believed that Jackson may have made a false report of criminal mischief to her vehicle.
Jackson was seen entering and leaving her husband's apartment at least three times after the officers' arrival. While Jackson was upstairs, Officer Bevel spoke to neighbors who told him that Jackson had in fact vandalized her own car. As Jackson left the apartment *87 the final time, she was seen putting a gun in the waistband of her pants. When Officer Bevel informed Jackson that she was under arrest for making a false police report, Jackson responded by hitting the officer and telling him that she would not get into the police car. The officer grabbed Jackson's hands, walked her to the back of the patrol car and placed her in the back seat. As the officer grabbed Jackson's knees in an attempt to put her legs in the car, Jackson told the officer that he made her drop her keys. As Officer Bevel stepped back and bent down as if to look for the keys, Jackson pulled the gun from her waistband and shot the officer six times. Four of the shots were to the head and two entered the shoulder area. The officer fell on Jackson, who pushed him aside and fled.
At the resentencing proceeding Jackson took the position that, at the time of the shooting, she was under the influence of drugs and alcohol, had a flashback of a prior sexual assault, perceived the struggle with Officer Bevel as an attempted rape and shot the officer as the result of a panic attack. In support of this contention, Jackson presented expert testimony that she suffered from post-traumatic stress disorder as a result of extended sexual abuse by her stepfather and that she suffered from battered woman syndrome. Much of this testimony was based on a hypnotic regression performed on Jackson. The three mental health experts who testified regarding Jackson's mental state at the time of the shooting were all of the opinion that Jackson was under the influence of extreme mental or emotional disturbance and her capacity to appreciate the criminality of her conduct, or to conform her conduct to the requirements of the law, was substantially impaired.
After hearing the testimony, the new jury recommended death by a vote of seven to five. The trial judge followed the recommendation, again sentencing Jackson to death. In aggravation the trial judge found 1) the victim was a law enforcement officer engaged in the performance of his official duties;[3] and 2) the murder was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification.[4] In mitigation, the trial judge found Jackson had a difficult childhood that included sexual abuse and as an adult she suffered domestic violence and abused drugs and alcohol. The judge rejected the statutory mitigating circumstances of extreme mental or emotional disturbance[5] and impaired capacity.[6] Jackson raises seven claims in this appeal.[7]
First we address Jackson's claim that both the cold, calculated, and premeditated aggravating factor and the standard jury instruction on this factor are unconstitutionally vague. Because these claims were preserved for our review, we address them both. Although we reject the challenge to the aggravating factor itself, see Fotopoulos v. State, 608 So.2d 784 (Fla. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 2377, 124 L.Ed.2d 282 (1993); Klokoc v. State, 589 So.2d 219, 222 (Fla. 1991), we find merit to Jackson's claim that the instruction given in this case on the aggravating factor of cold, calculated, and premeditated (CCP) is unconstitutionally vague.
*88 The trial court in this case denied defense counsel's request for an expanded instruction on the CCP aggravator, instead instructing Jackson's jury that it could consider, if established by the evidence, that "the crime for which the defendant is to be sentenced was committed in a cold, calculated and premeditated manner without a[ny] pretense of moral or legal justification." This standard instruction, which mirrors the language of section 921.141(5)(i), was upheld by this Court in Brown v. State, 565 So.2d 304, 308 (Fla.), cert. denied, 498 U.S. 992, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990). However, we believe that in light of the United States Supreme Court's decisions in Espinosa v. Florida, ___ U.S. ___, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), and Hodges v. Florida, ___ U.S. ___, 113 S.Ct. 33, 121 L.Ed.2d 6 (1992), the issue must be considered anew.
In Brown, the appellant claimed that the CCP instruction was unconstitutional based upon the Supreme Court's decision in Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). This Court rejected that claim on two bases: 1) "[w]e have previously found Maynard inapposite to Florida's death penalty sentencing regarding this state's heinous, atrocious, and cruel aggravating factor"; and 2) because Brown attempted to transfer Maynard to the different aggravating factor of CCP. Brown, 565 So.2d at 308.
The first rationale was discredited in Espinosa where the Supreme Court noted that it has held "instructions more specific and elaborate than [Florida's standard heinous, atrocious, or cruel instruction] unconstitutionally vague." ___ U.S. at ___, 112 S.Ct. at 2928. The Supreme Court rejected the State's argument that there is no need to instruct the jury with specificity because the jury is not the sentencer under Florida's sentencing scheme. Instead, the Supreme Court noted that under Florida's sentencing scheme, which requires the trial court to give "great weight" to the jury's recommendation, "the trial court indirectly weighed the invalid aggravating factor that we must presume the jury found." Id. Because "[t]his kind of indirect weighing of an invalid aggravating factor creates the same potential for arbitrariness as the direct weighing of an invalid aggravating factor," the result was error. Id.
The second rationale of Brown has been undercut by Hodges, where the Supreme Court vacated this Court's judgment affirming Hodges' conviction and death penalty and remanded for consideration in light of Espinosa. ___ U.S. at ___, 113 S.Ct. at 33. On remand, this Court noted that the heinous, atrocious, or cruel (HAC) aggravating factor played no part in Hodges' sentencing, but that CCP did. However, this Court never reached the merits of Hodges' claim that the CCP instruction was unconstitutionally vague because Hodges did not object to the form of the instruction at trial, and thus did not preserve the issue for review. Hodges v. State, 619 So.2d 272, 273 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 560, 126 L.Ed.2d 460 (1993).
Because the challenge to the CCP instruction has been properly preserved in this case and because Brown and its progeny can no longer serve as authority for summarily rejecting this claim, we must reconsider the constitutionality of the standard CCP instruction. As noted above, the jury in this case was instructed that it could consider, if established by the evidence, that "the crime for which the defendant is to be sentenced was committed in a cold, calculated and premeditated manner without a[ny] pretense of moral or legal justification." This standard instruction simply mirrors the words of the statute. Yet, this Court has found it necessary to explain that the CCP statutory aggravator applies to "murders more cold-blooded, more ruthless, and more plotting than the ordinarily reprehensible crime of premeditated first-degree murder," Porter v. State, 564 So.2d 1060, 1064 (Fla. 1990), cert. denied, 498 U.S. 1110, 111 S.Ct. 1024, 112 L.Ed.2d 1106 (1991), and where the killing involves "calm and cool reflection." Richardson v. State, 604 So.2d 1107, 1109 (Fla. 1992). The Court has adopted the phrase "heightened premeditation" to distinguish this aggravating circumstance from the premeditation element of first-degree murder. Id.; Rogers v. State, 511 So.2d 526, 533 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. *89 733, 98 L.Ed.2d 681 (1988). The Court has also explained that "calculation" constitutes a careful plan or a prearranged design. Rogers, 511 So.2d at 533. These explications by the Court make it clear that CCP encompasses something more than premeditated first-degree murder.
A vagueness challenge to an aggravating circumstance will be upheld if the provision fails to adequately inform juries what they must find to recommend the death penalty and as a result leaves the jury and the appellate courts with the kind of open-ended discretion which was held invalid in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Maynard, 486 U.S. at 361-62, 108 S.Ct. at 1857. The Supreme Court has found HAC-type instructions unconstitutionally vague because "[a] person of ordinary sensibility could fairly characterize almost every murder as `outrageously or wantonly vile, horrible and inhuman.'" Godfrey v. Georgia, 446 U.S. 420, 428-29, 100 S.Ct. 1759, 1764-65, 64 L.Ed.2d 398 (1980); see also Maynard, 486 U.S. at 364, 108 S.Ct. at 1859 ("an ordinary person could honestly believe that every unjustified, intentional taking of human life is `especially heinous'").
The premeditated component of Florida's standard CCP instruction poses the same problem. Where a defendant is convicted of premeditated first-degree murder, the jury has already been instructed that:
"Killing with premeditation" is killing after consciously deciding to do so. The decision must be present in the mind at the time of the killing. The law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the killing. The period of time must be long enough to allow reflection by the defendant. The premeditated intent to kill must be formed before the killing.
Fla.Std.Jury Instr. (Crim.) 63. Without the benefit of an explanation that some "heightened" form of premeditation is required to find CCP, a jury may automatically characterize every premeditated murder as involving the CCP aggravator.
It would also be reasonable for the general public to consider premeditated first-degree murder as "cold-blooded murder." Without legal guidance that the coldness element is only present when the killing involves "calm and cool reflection," Richardson, or when the murder is "more cold-blooded, more ruthless, and more plotting than the ordinarily reprehensible crime of premeditated first-degree murder," Porter, the average juror may automatically characterize all premeditated murders as CCP. This Court has also explained that calculation must involve a "careful plan or prearranged design." Rogers, 511 So.2d at 533. Yet, the jury receives no instruction to illuminate the meaning of the terms "cold," "calculated," or "premeditated." Moreover, the meaning of each of these terms is particularly important because the CCP factor is not applicable unless the crime was "cold, calculated, and premeditated."
Thus, in order to find the CCP aggravating factor under our case law, the jury must determine that the killing was the product of cool and calm reflection and not an act prompted by emotional frenzy, panic, or a fit of rage (cold), Richardson, 604 So.2d at 1109; and that the defendant had a careful plan or prearranged design to commit murder before the fatal incident (calculated), Rogers, 511 So.2d at 533; and that the defendant exhibited heightened premeditation (premeditated), Id.; and that the defendant had no pretense of moral or legal justification. Banda v. State, 536 So.2d 221, 224-25 (Fla. 1988), cert. denied, 489 U.S. 1087, 109 S.Ct. 1548, 103 L.Ed.2d 852 (1989). Certainly these requirements call for more expansive instructions to give content to the CCP statutory factor.[8] *90 Otherwise, the jury is likely to apply CCP in an arbitrary manner, which is the defect cited by the United States Supreme Court in striking down HAC instructions. See, e.g., Godfrey, 446 U.S. at 428-29, 100 S.Ct. at 1764-65. We do not suggest that every court construction of an aggravating factor must be incorporated into a jury instruction defining that aggravator. However, because the CCP factor is so susceptible of misinterpretation and has been the subject of so many explanatory decisions, we cannot say that the current instruction sufficiently informs the jury of the nature of this aggravator.
For all of these reasons, Florida's standard CCP jury instruction suffers the same constitutional infirmity as the HAC-type instructions which the United States Supreme Court found lacking in Espinosa, Maynard, and Godfrey  the description of the CCP aggravator is "so vague as to leave the sentencer without sufficient guidance for determining the presence or absence of the factor." Espinosa, ___ U.S. at ___, 112 S.Ct. at 2928.
Claims that the instruction on the cold, calculated, and premeditated aggravator is unconstitutionally vague are procedurally barred unless a specific objection is made at trial and pursued on appeal. James v. State, 615 So.2d 668, 669 & n. 3 (Fla. 1993). However, Jackson objected to the form of the instruction at trial, asked for an expanded instruction which essentially mirrored this Court's case law explanations of the terms, and raised the constitutionality of the instruction in this appeal as well. Thus, the issue has been properly preserved for review.
As the Supreme Court explained in Sochor v. Florida, 504 U.S. 527, ___, 112 S.Ct. 2114, 2122, 119 L.Ed.2d 326 (1992), while a jury is likely to disregard an aggravating factor upon which it has been properly instructed but which is unsupported by the evidence, the jury is "unlikely to disregard a theory flawed in law." See also Griffin v. United States, 502 U.S. 46, 59, 112 S.Ct. 466, 474, 116 L.Ed.2d 371 (1991) ("When jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error.").
In Stringer v. Black, 503 U.S. 222, 232, 112 S.Ct. 1130, 1137, 117 L.Ed.2d 367 (1992), the Supreme Court addressed the role of the reviewing court when the sentencing body is told to weigh an invalid factor in its decision:
[A] reviewing court may not assume it would have made no difference if the thumb had been removed from death's side of the scale. When the weighing process itself has been skewed, only constitutional harmless-error analysis or reweighing at the trial or appellate level suffices to guarantee that the defendant received an individualized sentence.
In the instant case, the trial judge found two aggravating circumstances (victim was a law enforcement officer and CCP) and several nonstatutory mitigating circumstances. We do not fault the trial judge for giving the standard CCP instruction in this case. Hodges was not decided by the Supreme Court until October 5, 1992. The sentence here was imposed by the trial judge on February 21, 1992. Yet, we cannot say beyond a reasonable doubt that the invalid CCP instruction did not affect the jury's consideration or that its recommendation would have been the same if the requested expanded instruction had been given. Thus, we vacate Jackson's death sentence and remand to the trial court with directions to empanel a new jury, to hold a new sentencing proceeding, and to resentence Jackson. See James, 615 So.2d at 669.
Although the above issue is dispositive, several of the remaining claims merit discussion. First, Jackson contends that it was error for the trial court to refuse to admit into evidence the videotape of the hypnotic regression session. In support of this claim, Jackson maintains that the videotape was admissible 1) to establish the basis for the expert opinion, 2) to rebut the State's *91 charges that the procedure used during the session was flawed, and 3) as mitigating evidence.
At the time the trial court granted the State's motion to exclude the videotape, it ruled that Dr. Mutter, who performed the regression, could testify about the session and read from the transcript of the session. In accordance with that ruling, the court allowed Dr. Mutter to describe in detail the procedure used and to read extensively from the transcript of the session. We cannot fault the trial court's actions.
In Morgan v. State, 537 So.2d 973 (Fla. 1989), we made clear that mental health experts can give opinions based in part on statements made while a defendant was under hypnosis. In that case, we receded from the Bundy II[9] rule that hypnotically refreshed testimony is per se inadmissible in a criminal trial to the extent it "affects a defendant's testimony or statements made to experts by a defendant in preparation of a defense." 537 So.2d at 976. We also set forth safeguards such as reasonable notice to the opposing party and the recording of the hypnotic session "to ensure compliance with proper procedures and practices." Id. However, we did not mandate that the jury be allowed to view the taped session.
Although the proponent of an expert opinion may choose to disclose the basis for the opinion, such disclosure is not required prior to eliciting the opinion. If the cross-examiner inquires about the basis of the opinion, the expert must disclose the facts or data upon which the opinion is based and the court in its discretion may require such disclosure. § 90.705(1), Fla. Stat. (1991). However, there is no requirement that the facts or data underlying an expert opinion be admitted into evidence in order to establish the basis of the opinion. See §§ 90.704,.705, Fla. Stat. (1991).
The trial court in this case allowed the expert opinion testimony but would not allow the videotape to be admitted into evidence because of the State's inability to cross-examine Jackson. Instead, the court allowed Dr. Mutter to explain the basis of his opinion by giving a detailed account of the procedure used and by reading extensively from the transcript of the regression session. Under these circumstances, the trial court did not abuse its discretion in refusing to admit the videotape as the basis for Dr. Mutter's opinion. Similarly, because Dr. Mutter was allowed to go into great detail concerning the procedure used and the questions asked during the session, we find no error in connection with the trial court's ruling that the videotape could not be admitted to rebut the State's charges that the hypnotic session was somehow flawed.
Finally, we also find no error in the trial court's refusal to admit the videotape as mitigating evidence. If we were to rule otherwise, defendants in capital cases could present as mitigating evidence videotaped statements to mental health experts, and thereby preclude cross-examination by the State.
During the jury instruction charge conference, the State requested jury instructions on 1) the crime was committed to disrupt the governmental function of law enforcement;[10] 2) the crime was committed to avoid arrest;[11] and 3) the homicide victim was a law enforcement officer.[12] Jackson then requested that the jury be instructed that aggravating circumstances merge into one when based on the same facts. The trial court refused to give the merger instruction but in its sentencing order found only the "victim was a law enforcement officer" factor applied. Jackson maintains that the failure to give the instruction resulted in reversible error. We do not agree.
In Castro v. State, 597 So.2d 259, 261 (Fla. 1992), we explained that when requested an instruction on "doubled" aggravating factors may be given, if applicable:
When applicable, the jury may be instructed on "doubled" aggravating circumstances *92 since it may find one but not the other to exist. A limiting instruction properly advises the jury that should it find both aggravating factors present, it must consider the two factors as one.
Even if the merger instruction should have been given in this case, Jackson is not entitled to relief on this basis. Reversal is not warranted where the trial court either merges the factors into one or, as was done in this case, finds only one of the factors to apply. See Valle v. State, 581 So.2d 40, 47 n. 9 (Fla.), cert. denied, 502 U.S. 986, 112 S.Ct. 597, 116 L.Ed.2d 621 (1991) (not error to refuse to give merger instruction where trial court merged aggravating factors into one).
We also find no merit to Jackson's contention that it was error to apply section 921.141(5)(j) in this case since the murder occurred before the effective date of this aggravating factor. Valle, 581 So.2d at 47 (application of victim was law enforcement officer aggravating factor to crime that occurred before the factor's enactment did not violate the ex post facto clause); Combs v. State, 403 So.2d 418 (Fla. 1981) (same as to cold, calculated, and premeditated factor), cert. denied, 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 862 (1982).
Accordingly, we vacate the death sentence and remand for a new sentencing proceeding for a newly empaneled jury.
It is so ordered.
BARKETT, C.J., and SHAW, GRIMES and HARDING, JJ., concur.
KOGAN, J., concurs specially with an opinion, in which BARKETT, C.J., concurs.
OVERTON and McDONALD, JJ., concur in part and dissent in part with opinions.
KOGAN, Justice, concurring specially,
I concur with the majority's resolution of all substantive issues addressed. I also agree that, under Sochor v. Florida, 504 U.S. 527, ___, 112 S.Ct. 2114, 2122, 119 L.Ed.2d 326 (1992), the death sentence must be vacated and the case remanded for a new sentencing proceeding before a newly empaneled jury because Jackson's original jury received an unconstitutionally vague instruction on the aggravating factor of cold, calculated and premeditated. I write separately to point out that this aggravating factor does not apply in this case because it was not proven to the exclusion of every reasonable doubt.
In connection with the cold, calculated, and premeditated aggravating factor, the trial court made the following findings in its order on resentencing:
The evidence indicates this Defendant was armed throughout this entire event or armed herself when she went to her home to obtain the papers relating to the car. It further indicates that when she produced the pistol on the unsuspecting officer, she made no attempt to disarm him or escape without the necessity of deadly force, but decided to shoot six (6) times at point blank range into his body. This decision was as coldly and premeditatively done as was her removal of the battery, spare tire and license plate from the just damaged car. For this, there can be no moral or legal justification.
Additionally, the Defendant had the presence of mind while struggling with the victim to devise a method to catch him off guard, i.e., the statement that she had dropped her keys. This record does not show a woman panicking in a frightening situation, but rather a woman determined not to be imprisoned who fashioned her opportunity to escape and then acted accordingly. Jackson v. State, 498 So.2d 406 (Fla. 1986).
These findings are nothing more than a recitation of the facts found to support the cold, calculated, and premeditated aggravating factor in this Court's 1986 affirmance of Jackson's conviction and original sentence. Jackson v. State, 498 So.2d 406, 412 (Fla. 1986), cert. denied, 483 U.S. 1010, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987). In light of subsequent refinements to this aggravating factor, our original decision provides no support for the aggravator's application on resentencing.
The record on resentencing is devoid of evidence of a "careful plan or prearranged design" to kill, as is now required under our decision in Rogers v. State, 511 So.2d 526 *93 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). There is no evidence Jackson was aware that she was about to be arrested when she retrieved her gun from her estranged husband's apartment; nor is there any evidence she took the gun for the purpose of shooting the police officer. There was testimony that Jackson usually carried the gun with her for protection and on the day of the shooting she had taken it to her husband's apartment. It is just as likely that Jackson, who did not live with her husband, returned to the apartment the third time to get her personal belongings so she could leave, as it is that she returned to get her gun so she could shoot the officer. There is no evidence that Jackson became aware of her impending arrest until she left the apartment the third time and was informed that she was under arrest and the struggle ensued.
There was no reason for Jackson to devise a plan to shoot Officer Bevel. After the officer took Jackson's statement, Jackson was allowed to freely come and go from her estranged husband's apartment, during which time the officer had Jackson's car towed and continued his investigation. Jackson could have left the scene at anytime prior to being informed of her arrest. Moreover, if Jackson had planned to shoot the officer when she retrieved her gun from her husband's apartment, it makes no sense that she would wait until the officer had her by the legs attempting to place her in the patrol car. She easily could have shot the unsuspecting officer before the struggle ensued or immediately after she was informed of her arrest. Jackson's statement that she "killed a cop" because he was "trying to arrest her" is just as consistent with a spur of the moment decision to shoot the officer as he attempted to put her in the patrol car as it is with a prearranged plan to kill the officer in order to avoid arrest.
Jackson's statement that the officer made her drop her keys likewise was not necessarily part of a prearranged plan to distract the officer so Jackson could shoot him. Based on the evidence, Jackson's keys may have actually fallen during the struggle, providing the opportunity for Jackson's escape. This scenario is supported by testimony that eyewitnesses heard what appeared to be keys dropping, as the officer was attempting to put Jackson's legs in the car.
Even if Jackson had the presence of mind while struggling with the officer to devise a method to catch him off guard and shoot him, this alone is insufficient evidence of a careful plan or prearranged design to kill Officer Bevel. In contrast to the record in this case, in Valle v. State, 581 So.2d 40 (Fla.), cert. denied, 502 U.S. 986, 112 S.Ct. 597, 116 L.Ed.2d 621 (1991), there was extensive evidence of a careful plan or prearranged design to kill a law enforcement officer in order to avoid arrest. Valle had been stopped for a traffic violation. After he heard information over the police radio that led him to believe that he would be arrested, he returned to his car, got a gun, and told his passenger that he would have to "waste" the police officer. Valle then concealed the gun along his side, walked slowly back to the patrol car, called out "officer" in order to get a better shot, and shot the officer from a distance of one and one half to two feet. There was no question that when Valle became aware of his impending arrest, he formulated a plan to avoid arrest by shooting the officer and then carefully executed the plan.
There is no comparable evidence of a calculated plan to shoot Officer Bevel. At best, the record reveals a woman who acted on an opportunity to escape during a struggle with a police officer. Thus, on this record, the State did not meet its burden of proving the cold, calculated, and premeditated aggravator beyond a reasonable doubt.
BARKETT, C.J., concurs.
OVERTON, Justice, concurring in part and dissenting in part.
I agree that the appellant is entitled to a new penalty phase proceeding. In my view, the facts in this case do not meet the criteria of our present case law to establish the "cold, calculated, and premeditated" aggravating factor.
I strongly disagree, however, with the majority's finding that the standard jury instruction given in this case on the cold, calculated, *94 and premeditated aggravating factor is constitutionally invalid. I find that the instruction was proper because the words "cold and calculated," as distinguished from "heinous, atrocious, or cruel," are commonly understood, and the word "premeditated" was expressly defined for the jury. By this decision, the majority has made the penalty phase of every death case in which the standard jury instruction on the cold, calculated, and premeditated aggravating factor was given subject to attack in a motion under rule 3.850, Florida Rules of Criminal Procedure.
While I find that the standard jury instruction on the cold, calculated, and premeditated aggravating factor is not constitutionally invalid, I do agree that it can be improved because of our subsequent cases, and I would ask the standard jury instructions committee to present us with a proposed jury instruction within a designated short period of time.
McDONALD, Justice, concurring in part, dissenting in part.
I concur with all parts of the majority opinion except the holding that the instruction on the cold, calculated aggravating factor is unconstitutionally vague and that Jackson is entitled to a new sentencing hearing. I would affirm the death penalty because no matter how they are legally described, Jackson's actions in killing the police officer under the circumstances as demonstrated in the evidence has properly earned her a ticket to the electric chair.
The decision to impose the death penalty is not predicated on the number of aggravating factors or what they are called. So long as a statutory aggravating factor exists, the sentencing jury or judge looks at the totality of the circumstances to determine whether or not the sentence should be death or life. Jackson needlessly and without provocation killed a police officer while that officer was performing a police function. Some may disagree whether her actions met the statutory aggravating factor of cold and calculated, but such difference does not change or modify her behavior. It matters not whether we ascribe this aggravating factor to her; her senseless, unprovoked, and unnecessary killing of the officer supports the jury's recommendation and the trial judge's sentence even if Jackson has some mitigating circumstances because of her childhood and mental condition.
As to the instruction itself, to me it appears clear and unambiguous. At the same time, because of our decisions discussing the factor, I believe that upon request, a defendant has the right to have this aggravating circumstance additionally explained or further defined. This was requested in this case, and the trial court committed error in not granting some additional instruction. Because I am convinced that any additional instruction would affect neither jury nor judge, I would still affirm.

ORDER ON MOTION FOR REHEARING
We recently rejected the State's contention that our decision in this case was wrongly decided in light of the United States Supreme Court's decision in Arave v. Creech, ___ U.S. ___, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993). In Walls v. State, 641 So.2d 381 (Fla. 1994), we explained:

Arave dealt with facts vastly different from those in Jackson. The Arave Court confronted a self-confessed serial killer who had admitted murdering at least twenty-six people in seven states. Moreover, the conviction in Arave occurred in Idaho, a state that does not allow any jury involvement in the sentencing hearing, which is conducted entirely before the trial court. Also, the aggravating factor at issue in Arave  that the murder "exhibited utter disregard for human life"  had been the subject of an extensive limiting construction placed on it by the Idaho Supreme Court. Arave [___ U.S. at ___], 113 S.Ct. at 1539 (quoting State v. Osborn [102 Idaho 405], 631 P.2d 187 (1981). The limiting construction imposed by the Idaho Supreme Court essentially is in harmony with the requirements of Jackson; and the clarification made by Jackson clearly is necessary because both judge and jury actively participate as co-sentences during the Florida penalty phase. Only the jury instruction was found unconstitutional in Jackson, unlike in Idaho where no jury is present to be instructed; and the sole *95 issue in Arave was the aggravating factor itself, which was not the case in Jackson.

641 So.2d at 387 n. 3. Accordingly, the State's motion for rehearing is denied.
GRIMES, C.J., and SHAW, KOGAN and HARDING, JJ., concur.
OVERTON, J., and McDONALD, Senior Justice, dissent.
NOTES
[1] We have jurisdiction under article V, section 3(b)(1) of the Florida Constitution.
[2] Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), overruled by Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).
[3] § 921.141(5)(j), Fla. Stat. (1991).
[4] § 921.141(5)(i), Fla. Stat. (1991).
[5] § 921.141(6)(b), Fla. Stat. (1991).
[6] § 921.141(6)(f), Fla. Stat. (1991).
[7] Jackson raises the following claims: 1) the trial court erred in finding that the homicide was committed in a cold, calculated and premeditated manner; 2) the trial court erred in failing to properly find, weigh and consider Jackson's mental and emotional condition at the time of the shooting; 3) the death sentence is not proportional in this case; 4) the trial court erred in refusing to admit into evidence the videotape of the hypnotic regression that was performed on Jackson; 5) the cold, calculated and premeditated aggravating factor is unconstitutionally vague and the instruction on that factor failed to apprise the jury of the limiting interpretation that has been given this factor; 6) the trial court erred in failing to give a jury instruction that the aggravating factors of committed to disrupt the governmental function of law enforcement, committed to avoid arrest, and the victim was a law enforcement officer merged into a single factor in this case; and 7) application of the aggravating circumstance that the victim was a law enforcement officer in this case violates Jackson's rights under the ex post facto provisions of the Florida and United States Constitutions.
[8] Until such time as a new standard jury instruction can be adopted, the following instruction should be used:

The crime for which the defendant is to be sentenced was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification. In order for you to consider this aggravating factor, you must find the murder was cold, and calculated, and premeditated, and that there was no pretense of moral or legal justification. "Cold" means the murder was the product of calm and cool reflection. "Calculated" means the defendant had a careful plan or prearranged design to commit the murder. "Premeditated" means the defendant exhibited a higher degree of premeditation than that which is normally required in a premeditated murder. A "pretense of moral or legal justification" is any claim of justification or excuse that, though insufficient to reduce the degree of homicide, nevertheless rebuts the otherwise cold and calculating nature of the homicide.
[9] Bundy v. State, 471 So.2d 9 (Fla. 1985), cert. denied, 479 U.S. 894, 107 S.Ct. 295, 93 L.Ed.2d 269 (1986).
[10] § 921.141(5)(g), Fla. Stat. (1991).
[11] § 921.141(5)(e), Fla. Stat. (1991).
[12] § 921.141(5)(j), Fla. Stat. (1991).