699 So.2d 674 (1997)
Michael BELL, Appellant,
v.
STATE of Florida, Appellee.
No. 86094.
Supreme Court of Florida.
July 17, 1997.
Rehearing Denied September 17, 1997.
*675 Nancy A. Daniels, Public Defender and W.C. McLain, Assistant Public Defender, Second Judicial Circuit, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General and Sara D. Baggett, Assistant Attorney General, West Palm Beach, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon Michael Bell. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm.
On December 9, 1993, appellant Michael Bell shot to death Jimmy West and Tamecka Smith as they entered a car outside a liquor lounge in Jacksonville. Three eyewitnesses testified regarding the murders, which the trial court described in the sentencing order as follows. In June 1993, Theodore Wright killed Lamar Bell in a shoot-out which was found to be justifiable homicide committed in self-defense. Michael Bell then swore to get revenge for the murder of his brother, Lamar Bell. During the five months following Lamar Bell's death, Michael Bell repeatedly told friends and relatives he planned to kill Wright. On December 8, 1993, Michael Bell, through a girlfriend, purchased an AK-47 assault rifle, a thirty-round magazine, and 160 bullets. The next night, Bell saw Theodore Wright's car, a yellow Plymouth. Bell left the area and shortly returned with two friends and his rifle loaded with thirty bullets. After a short search, he saw the yellow car in the parking lot of a liquor lounge. Bell did not know that Wright had sold the car to Wright's half-brother, Jimmy West, and that West had parked it and had gone into the lounge. Bell waited in the parking lot until West left the lounge with Tamecka Smith and another female. Bell picked up the loaded AK-47 and approached the car as West got into the driver's seat and Smith began to enter on the passenger's side. Bell approached the open door on the driver's side and at point-blank range fired twelve bullets into West and four into Smith. The other female ducked and escaped injury. After shooting West and Smith, Bell riddled with bullets the front of the lounge where about a dozen people were waiting to go inside. Bell then drove to his aunt's house and said to her, "Theodore got my brother and now I got his brother."
Appellant was charged with two counts of first-degree murder. At trial in March 1995, appellant pleaded not guilty by reason of self-defense, stating that he believed West had reached for a weapon just before appellant began shooting. The defense presented no evidence or witnesses. A jury found appellant guilty of the first-degree murders of Smith and West and unanimously recommended the death penalty for both murders. During the penalty phase, a lounge security guard testified for the State that he and seven or eight other people were in the line of fire and hit the ground when appellant sprayed bullets in the parking lot of the lounge. He also testified that appellant shot four or five bullets into a house next door in which three children were residing at the time. The State introduced a copy of a record showing that appellant was convicted of armed robbery in 1990. Also during the penalty phase, appellant's mother testified for the defense that she and appellant had *676 received death threats from Wright and West. She testified that appellant was in good mental health and was gainfully employed and that she believed he did not commit the murders. In a single sentencing order covering both homicides, the court followed the jury's unanimous recommendation and imposed death sentences, finding three aggravating circumstances[1] and one marginal statutory mitigating circumstance.[2]
We find no merit in appellant's first claim that the trial court erred in failing to conduct proper inquiries under Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973), and Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). We examine first the Nelson claim and find that the trial court did comply with the requirements of Nelson, which we adopted in Hardwick v. State, 521 So.2d 1071 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988),[3] and that no basis was demonstrated for requiring the trial court to appoint other counsel.
Appellant on two occasions complained of the performance of his court-appointed counsel. The trial court held hearings on the complaints. The first hearing was about two months before the trial and the second was on the day of jury selection. The court made an inquiry in each hearing as to the basis of appellant's complaints. Appellant was allowed to state the reasons for his dissatisfaction with counsel. At the first hearing, the dissatisfaction centered upon appellant's seeking increased contact with his lawyer, more development of witness information, and more personal participation in his defense. In response, the trial judge addressed appellant's complaints about the lack of development of witness information. The judge granted counsel the authority to hire an investigator and continued the trial to allow time for development of witness information. In his complaints, appellant did not actually assert that counsel was incompetent. Rather, he objected to the manner in which counsel was conducting the defense. Even so, the trial judge stated that counsel was competent and had "tried many, many cases and met a great deal of success in some of the cases and had a great deal of experience."
At the second hearing, appellant's complaint was based on a discussion between counsel and appellant in a jail holding facility in the presence of an inmate who was the brother of a State witness. The judge allowed appellant to explain his complaint, asked counsel for his explanation of the client conference, and found counsel's explanation to be adequate. Thus, the trial court found no basis for granting appellant's motion to appoint new counsel.
As in Hardwick, we find nothing in the record of either hearing to establish that appellant's counsel was incompetent. We find this case similar to Lowe v. State, 650 So.2d 969 (Fla.1994), cert. denied, ___ U.S. ___, 116 S.Ct. 230, 133 L.Ed.2d 159 (1995), and Capehart v. State, 583 So.2d 1009 (Fla. 1991), cert. denied, 502 U.S. 1065, 112 S.Ct. 955, 117 L.Ed.2d 122 (1992), in each of which we concluded that the trial courts did not err in denying motions for new court-appointed counsel.
*677 With respect to appellant's Faretta contention, we have carefully examined the record of the hearings, and we find no Faretta violation. Faretta requires that a defendant be allowed self-representation when the defendant clearly and unequivocally declares to the trial judge a desire for self-representation and the judge determines that the defendant has knowingly and intelligently waived the right to be represented by a lawyer. Faretta at 835-36, 95 S.Ct. at 2541. No such declaration to the judge was made in this case. Appellant asked the judge to allow him to assist in his own defense by acting as co-counsel or stand-by counsel along with a court-appointed lawyer. The judge focused upon that request when he made inquiries of appellant, and we find no abuse of discretion in the trial court's denial of the request to act as co-counsel.
We do agree with appellant's contention in this appeal that after his inquiries, the trial judge appeared to give too much weight to appellant's lack of knowledge of court rules and made an overstatement that appellant was not competent to serve as co-counsel or counsel even though there was no request to act alone as counsel. Technical legal knowledge is not the criterion for assessing the knowing exercise of a defendant's right to defend himself. Faretta at 835, 95 S.Ct. at 2541. However, the context of the entire hearing concerned appellant's complaints about his counsel's representation and appellant's desire to be more active in assisting his lawyer rather than any potential assertions of a right to self-representation. Appellant never asserted clearly and unequivocally at any other time that he wanted to represent himself. We find that the judge's limited comment that appellant was not competent to represent himself as counsel or co-counsel did not foreclose appellant's continuing ability to make a clear and unequivocal declaration of any desire to assert a right of self-representation. Appellant could have declared his desire to represent himself in later proceedings including the second hearing in which appellant complained about counsel's conduct and then the entire trial. However, at no time during any proceedings did appellant request to act alone as his own counsel.
Therefore, we conclude that the trial court in this case complied with Hardwick by adequately inquiring into appellant's complaints about his defense counsel and stating its findings. The trial court was not required to comply with Faretta. Accordingly, we find no error in appellant's first issue.
As to his second issue, appellant argues that the trial court erred in finding as an aggravating circumstance that the murders were committed in a cold, calculated, and premeditated (CCP) manner. Appellant claims that the CCP aggravator cannot be applied because the prosecution relied on two alternative theories, transferred intent and quickly-formed, premeditated intent to kill West; and the aggravator could only logically apply to the transferred-intent theory. Second, he contends that the killing of Smith was accidental, with no transferred intent, and therefore the killing of Smith could not have been cold, calculated, and premeditated. Third, appellant claims that he shot in self-defense and thus had a pretense of moral or legal justification for the shooting. We disagree with all three contentions.
In order to prove the existence of the CCP aggravator, the State must show a heightened level of premeditation establishing that the defendant had a careful plan or prearranged design to kill. Rogers v. State, 511 So.2d 526, 533 (Fla.1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). Here, the State proved such a prearranged plan to kill. Cold, calculated, premeditated murder can be indicated by the circumstances showing such facts as advance procurement of a weapon, lack of resistance or provocation, and the appearance of a killing carried out as a matter of course. Swafford v. State, 533 So.2d 270 (Fla.1988), cert. denied, 489 U.S. 1100, 109 S.Ct. 1578, 103 L.Ed.2d 944 (1989). Our review of the record shows that appellant told several people that he planned to kill Theodore Wright, and he purchased a gun for that purpose. Although West and Smith were not the actual subjects of the planning, this fact does not preclude a finding of cold, calculated premeditation. Heightened premeditation necessary for a CCP finding does not have to be directed *678 toward the specific victim. Sweet v. State, 624 So.2d 1138, 1142 (Fla.1993), cert. denied, 510 U.S. 1170, 114 S.Ct. 1206, 127 L.Ed.2d 553 (1994), citing Provenzano v. State, 497 So.2d 1177, 1183 (Fla.1986), cert. denied, 481 U.S. 1024, 107 S.Ct. 1912, 95 L.Ed.2d 518 (1987). The focus of the CCP aggravator is the manner of the killing, not the target. Id. In addition, we find no pretense of legal justification based on self-defense because there is no colorable claim that the murders were motivated out of self-defense. See Christian v. State, 550 So.2d 450 (Fla.1989), cert. denied, 494 U.S. 1028, 110 S.Ct. 1475, 108 L.Ed.2d 612 (1990); Banda v. State, 536 So.2d 221 (Fla.1988), cert. denied, 489 U.S. 1087, 109 S.Ct. 1548, 103 L.Ed.2d 852 (1989). Here, the record clearly shows that the motivation for the murders was retribution.
Therefore, we find competent, substantial evidence in the record supporting the finding that the murders were cold, calculated, and premeditated without any pretense of moral or legal justification. Accordingly, we hold that the trial court did not err in its finding of the CCP circumstance.
In a related issue, appellant contends that the trial court erred in instructing the jury on the CCP aggravating circumstance. As given, the instruction combined the instruction this Court suggested in Jackson v. State, 648 So.2d 85, 95 n. 8 (Fla.1994), and an instruction the State requested concerning transferred intent.[4] First, the legal principle of transferred intent does apply to the murder of Smith, as we noted in our previous discussion of the CCP aggravator. See Sweet. Second, we determined in Jackson that the standard CCP jury instruction was unconstitutionally vague and that a claim that a CCP jury instruction is unconstitutionally vague is procedurally barred absent a specific objection at trial. Our review of the record reflects that defense counsel failed to properly preserve this issue for appeal. In fact, counsel for appellant affirmatively stipulated to the court's jury instruction at trial. Therefore, appellant's current argument is procedurally barred. Even if there were no procedural bar, the trial court gave a proper expanded instruction pursuant to Jackson.[5] Additionally, the trial record reflects that any failure to give a more comprehensive CCP instruction would have been harmless error because the facts in the record establish that this murder was cold, calculated, and premeditated under any definition. See Larzelere v. State, 676 So.2d 394, 408 (Fla.), cert. denied, ___ U.S. ___, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). Accordingly, we find no error in the trial court's CCP instruction.
In his final issue, appellant argues that the trial court erred in failing to properly consider and find mitigating circumstances. We disagree. A sentencing court must expressly evaluate in its written order each mitigating circumstance proposed by the defendant; the relative weight accorded to each mitigating circumstance is left to the discretion of the sentencing court. Windom v. State, 656 So.2d 432, 440 (Fla.), cert. denied, ___ U.S. ___, 116 S.Ct. 571, 133 L.Ed.2d 495 (1995). Our review of the record *679 reflects that the trial court did not abuse its discretion in giving only minimal weight to the statutory mitigating circumstance of extreme mental or emotional disturbance and finding no evidence of nonstatutory mitigation. Appellant presented no evidence during the guilt phase of the trial and only the testimony of his mother during the penalty phase. The trial court properly examined the record for mitigation, including a competency evaluation, and then weighed the minimal mitigation it found. Based on the record and what was presented to the trial court, we find no error regarding the court's finding and weighing of mitigating circumstances.
In sum, we find no error affecting the judgment or sentence. We further find the sentences of death appropriate. Therefore, the convictions and sentences are affirmed.
It is so ordered.
KOGAN, C.J., and OVERTON, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
SHAW, J., concurs in result only as to conviction and concurs as to sentence.
NOTES
[1] The court found that Bell had been convicted of a prior violent felony; that he had knowingly created a great risk of death to many persons; and that the killings were committed in cold, calculated, and premeditated manner.
[2] The court found a marginal statutory mitigating circumstance of extreme mental or emotional disturbance because of the death of appellant's brother five months earlier.
[3] In Hardwick, we approved the following procedure adopted by the Fourth District in Nelson:

If incompetency of counsel is assigned by the defendant as the reason, or a reason, the trial judge should make a sufficient inquiry of the defendant and his appointed counsel to determine whether or not there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant. If reasonable cause for such belief appears, the court should make a finding to that effect on the record and appoint a substitute attorney who should be allowed adequate time to prepare the defense. If no reasonable basis appears for a finding of ineffective representation, the trial court should so state on the record and advise the defendant that if he discharges his original counsel the State may not thereafter be required to appoint a substitute.
Hardwick at 1074-75 (quoting Nelson, 274 So.2d at 258-59).
[4] The judge read the following instruction to the jury:

And three, that the crimes for which the defendant is to be sentenced were committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification
In order for you to consider this aggravating factor your [sic] must find that the murder was cold, and calculated, and premeditated and that there was no pretense of moral or legal justification. Cold means that the murder was the product of calm and cool reflection. Calculated means that the defendant had a careful plan or prearranged design to commit the murder. Premeditated means that the defendant exhibited a higher degree of premeditation than that which is normally required in a premeditated murder. The heightened premeditation necessary for this circumstance does not have to be directed toward the specific person killed. If the murder was committed in a manner that was cold and calculated, the aggravating circumstance of heighten [sic] premeditation is applicable.
A pretense of moral or legal justification is any claim of justification or excuse that though insufficient to reduce the degree of the homicide nevertheless rebutts [sic] the otherwise cold and calculating nature of the homicide.
[5] At the time of appellant's trial, this Court had not yet adopted the revised jury instruction which was designed to remedy the vagueness problem we found in Jackson. Therefore, the expanded instruction in Jackson at 648 So.2d 89 n. 8 was the proper instruction.