703 So.2d 504 (1997)
King BROOKS, Appellant,
v.
STATE of Florida, Appellee.
No. 96-1771.
District Court of Appeal of Florida, First District.
December 23, 1997.
*505 Nancy A. Daniels, Public Defender, and Michael A. Wasserman, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General, and Diane D. Starke, Assistant Attorney General, Tallahassee, for Appellee.
ALLEN, Judge.
In this direct criminal appeal, the appellant challenges his conviction for burglary of a dwelling. Because the trial judge failed to conduct any inquiry pursuant to Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), when he permitted the appellant to conduct a portion of his defense at trial, we reverse the appellant's conviction and remand this case for a new trial. Payne v. State, 642 So.2d 111 (Fla. 1st DCA 1994).
Prior to trial, the trial judge granted the appellant's motion to be appointed as trial co-counsel. On the day of jury selection, the appellant requested that his court-appointed counsel be discharged due to ineffectiveness. The judge inquired into the appellant's reasons and ultimately denied the motion. The jury was selected that day, and the trial was held the following day. The appellant delivered the opening statement and his court-appointed counsel handled the record portion of the remainder of the proceeding.
On appeal the appellant raises two issues, contending that the trial judge conducted an inadequate hearing when the appellant moved to dismiss his court-appointed attorney due to ineffectiveness, and that the trial judge erred in failing to conduct an inquiry when he granted the appellant's request to act as co-counsel. Although we conclude that the first contention is without merit, the record supports the appellant's assertion that the trial judge did not conduct an adequate inquiry pursuant to Faretta when he granted the appellant's motion to act as co-counsel. Further, federal caselaw and our opinion in Payne require reversal upon this point.
The problems associated with hybrid representation are legion in the cases. For this reason, hybrid representation, such as the arrangement that occurred in the present case, is generally disfavored. The United States Supreme Court has expressly recognized that "Faretta does not require a trial judge to permit `hybrid' representation." McKaskle v. Wiggins, 465 U.S. 168, 183, 104 S.Ct. 944, 953, 79 L.Ed.2d 122 (1984). Nonetheless, it generally has been found to be within a trial judge's discretion to permit it. See, e.g., United States v. Kimmel, 672 F.2d 720 (1982).
Describing hybrid representation as "[o]ne of the most difficult and confusing components of the right to self-representation," one commentator has nonetheless noted that there are several "well-adhered to rules" followed by the courts. Among them is that "where a trial court does allow hybrid representation, the court must obtain a valid waiver of counsel from the defendant." See John F. Decker, The Sixth Amendment Right to *506 Shoot Oneself in the Foot: An Assessment of the Guarantee of Self-Representation Twenty Years After Faretta, 6 Seton Hall Const. L.J. 483, 537-540 (1996). As explained by the Ninth Circuit:
When the accused assumes functions that are at the core of the lawyer's traditional role ... he will often undermine his own defense. Because he has a constitutional right to have his lawyer perform core functions, he must knowingly and intelligently waive that right. This holding is a logical extension of the well-established rule that a waiver is required despite the presence of a court appointed advisor.
Kimmel, 672 F.2d at 721; see also, e.g., United States v. Taylor, 113 F.3d 1136 (10th Cir.1997); State v. Penson, 630 So.2d 274 (La.Ct.App.1993).
Thus, while certainly within his discretion, the trial judge in this case was in no sense obligated to grant the appellant's motion to serve as co-counsel. Had he simply denied the motion, the appellant would have had no grounds to complain, and no Faretta warnings would have been required in the absence of an unequivocal request for self-representation. See Bell v. State, 699 So.2d 674 (Fla. 1997); Cason v. State, 652 So.2d 1191 (Fla. 3d DCA 1995).
However, in this case, unlike in either Bell or Cason, the trial judge did grant the appellant's motion to serve as co-counsel, and the appellant in fact did conduct a "core function" of a lawyer. The trial judge should therefore have conducted a Faretta inquiry and obtained a knowing and intelligent waiver of the appellant's right to counsel. Such was required under the prevailing majority view in the United States and under our opinion in Payne.
In Payne, the trial judge denied Payne's motion to discharge his court-appointed attorney and proceed pro se, but appointed Payne as co-counsel. Payne then conducted the entire trial and was convicted. We reversed because the record did not reveal that Payne made a knowing and intelligent decision to represent himself. 642 So.2d at 113. While superficially distinguishable from the case at bar, a careful reading of Payne and the cases cited therein reveals that, after careful consideration of the cases and underlying policies, we adopted a brightline rule requiring a trial judge to administer Faretta warnings whenever a defendant undertakes a portion of his defense:
Some courts have concluded that when a defendant proceeds in a hybrid fashion the trial court need not conduct the same inquiry as required when the defendant proceeds pro se without the assistance of counsel. See, e.g., West Virginia v. Layton, 189 W.Va. 470, 432 S.E.2d 740 (1993) and cases cited therein. Some courts have advocated that an appellate court may retroactively determine to what extent a defendant participated in his own defense, Parren v. State, 309 Md. 260, 523 A.2d 597 (1987). We believe, however, the better standard is to require that the trial court give the same warnings to a defendant who has standby counsel as to one who does not. The reason for this conclusion is that at the time the trial court is faced with the request from the defendant to represent himself, the court cannot predict how much of his own defense a defendant will conduct; therefore the court cannot predict how much of his right to counsel a defendant will waive. The only way for a trial court to ensure that a defendant is adequately informed of the risks he undertakes in representing himself when the defendant proceeds to trial with co-counsel or standby counsel is to inform the defendant at the beginning of the trial of the dangers of self-representation.
Id. at 113. One of the cases relied upon in Payne was Penson, a case virtually indistinguishable from the present case. In Penson, as in the present case, the defendant was granted co-counsel status prior to trial, and although he likewise attempted to discharge his court-appointed counsel, when that motion was denied he proceeded to trial without ever making an unequivocal request to represent himself. At trial, he delivered part of the opening statement, asked some questions in cross-examination of two state witnesses and partially argued some legal issues; his court-appointed attorney handled the remainder of the trial. The court reversed his conviction, finding that he had performed *507 several functions of an attorney, and thus, despite the lack of an unequivocal demand for self-representation, the trial judge should have warned him of the dangers and disadvantages of self-representation and determined whether his waiver of counsel was voluntary and intelligent. Id. at 278.
We are persuaded of the wisdom and forethought of Payne by the factual situation in the present case. When the trial judge appointed the appellant "co-counsel," he was only contemplating that the appellant would do a little research in the law library while he was in jail. Such an innocent accommodation of the appellant's desire hardly seems worthy of an extended lecture on the wisdom of self-representation. However, as it turns out, the appellant actually did more than just research; he filed pretrial motions and he gave the opening statement at his trial, unquestionable "core functions" of an attorney. See Kimmel; Penson. As was indicated in Payne, the appellant's right to Faretta warnings could have been easily satisfied had the trial court complied with Faretta before authorizing any acts of self-representation. And, if such warnings had been given, the appellant's misguided attempt at self-representation might have been avoided.
The appellant's conviction is reversed and the case is remanded.
PADOVANO, J., concurs.
MINER, J., dissents with written opinion.
MINER, Judge, dissenting.
Appellant, King Brooks, was convicted by a jury of burglary of a dwelling and sentenced to 30 years' imprisonment as an habitual offender. He seeks review of his conviction and sentence, complaining primarily that the trial court permitted him, at his request, to assist his court-appointed attorney as co-counsel at his trial without first informing him of the pitfalls associated with self-representation. Basing their decision on Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and Payne v. State, 642 So.2d 111 (Fla. 1st DCA 1994), my colleagues in the majority reverse and remand for a new trial. In finding that the trial court erred in permitting the appellant "to conduct a portion of his defense at trial," without conducting Faretta proceedings, they effectively hold 1) that a Faretta inquiry was required prior to permitting Brooks to assist his attorney as co-counsel, and 2) a guilty verdict in a case in which the trial court failed to comply with the Faretta mandate before granting the defendant co-counsel status is per se reversible error. Because I believe Brooks' complaint under the circumstances is disingenuous, at best, and wholly bereft of legal and factual support, I cannot concur in the majority holding.
Around 4:30 p.m. on December 30, 1995, Oliver Thomas' attention was attracted to a man whose face he could not see but who was attempting to pry the screen off a rear window of a house next door belonging to one Joe Alexander, Jr., who at that time was out of town. Thomas saw the man take the screen off, open the window, throw in what appeared to be a sack he was carrying, and enter the home. Thomas then notified the caretaker of the property, Alice Mixon, who in turn notified the Duval County Sheriff's Office of what was logged in as a burglary in-progress. Sheriff's Deputies Whitcomb, Price, and Anderson went to the scene to investigate and observed the window screen lying on the ground, scratches around the window, and the window partially opened.
A short time thereafter, appellant began to climb out the window and was helped to the ground by Deputies Price and Anderson. He was handcuffed, and a search of his person produced assorted jewelry, an electrical cord, and a screwdriver. Deputy Whitcomb read Brooks his Miranda rights which Brooks acknowledged he understood. He then admitted that the items discovered in his pockets, excepting a pair of cufflinks, did not belong to him. A subsequent search inside the home turned up two sacks full of Mr. Alexander's belongings. Appellant was booked and charged with burglary of a dwelling and possession of burglary tools.
Because he was indigent, the public defender's office was appointed to represent Brooks. On February 13, 1996, his counsel filed a motion with the court to permit Brooks to participate as co-counsel in the case, which motion was granted with little *508 ado. The record reflects that Brooks' public defender indicated that Brooks' participation would primarily involve researching the law, apparently at the library in the jail. At no time during the brief hearing on this motion did Brooks indicate he wanted to waive representation by counsel and represent himself.
Thereafter, on March 25, 1996, the eve of trial, Brooks moved to dismiss his attorney on grounds of ineffectiveness. After a Nelson inquiry, the trial court correctly concluded that appellant's reasons why he wanted to discharge his attorney were without substance and denied Brooks' motion to dismiss counsel. At no time during this hearing did Brooks indicate in any way that he wanted to represent himself at trial. Indeed, never at any time during the course of these proceedings did appellant request to act alone as his own counsel.
During the jury selection phase of appellant's trial, Brooks participated in this process by being present at the bench when challenges were exercised, which was his right by virtue of his being the defendant and not because he was co-counsel. Moments before the trial began, the court was advised by Brooks' attorney that Brooks would deliver the opening statement. The trial court inquired of counsel whether Brooks understood the purpose of an opening statement and was assured that he did. The court then permitted Brooks to make the opening "statement" to the jury, in which he made an unabashed bid for a jury pardon for committing the burglary he acknowledged had been committed, twice invoking the name of the Creator and blaming his predicament on anger, ignorance, demon rum, sleepless nights, and drug addiction.[1]
*509 Appellant was found guilty as charged on the burglary count and sentenced as an habitual offender. On appeal, the only issue he raises that merits discussion is that the trial court erred in failing to warn him of the pitfalls of self-representation at the time it granted his request to be allowed to act as co-counsel. The State contends that appellant never invoked his right of self-representation and therefore no Faretta hearing was triggered in the first instance.
In Faretta, the United States Supreme Court held that the right of an accused personally to manage and conduct his or her own defense is guaranteed under the Sixth Amendment. The invocation of this right to self representation, however, must be clear and unequivocal. State v. Craft, 685 So.2d 1292 (Fla.1996). Only when such a clear and unequivocal request to represent himself is made must the court inquire into a defendant's knowing and intelligent waiver of his right to counsel, which colloquy includes informing the defendant of the dangers of self-representation. Faretta, 422 U.S. at 835, 95 S.Ct. at 2541. Invoking the right to self-representation necessarily entails a waiver of the right to counsel; "a defendant obviously cannot enjoy both rights at trial." Brown v. Wainwright, 665 F.2d 607, 610 (5th Cir.1982). Although stand-by counsel (whose unsolicited participation is limited) may be appointed without a pro se defendant's consent, a defendant has no constitutional right to combine the right of self-representation with the right to assistance of counsel. McKaskle v. Wiggins, 465 U.S. 168, 183, 104 S.Ct. 944, 953, 79 L.Ed.2d 122 (1984). "A [pro se] defendant does not have a constitutional right to choreograph special appearances by counsel." Id. A court's decision to allow such "hybrid" representation rests within the sound discretion of the court. Id. See U.S. v. Mills, 704 F.2d 1553, 1557 (11th Cir. 1983)("Mills acknowledges that under the law in this circuit, the right to appointed counsel and the right to proceed pro se exist in the alternative and the decision to permit a defendant to proceed in hybrid fashion rests in the sound discretion of the trial court."), cert. denied, 467 U.S. 1243, 104 S.Ct. 3517, 82 L.Ed.2d 825 (1984). The Eleventh Circuit has held that a defendant's election to act as co-counsel may waive any earlier asserted rights of self-representation. Raulerson v. Wainwright, 732 F.2d 803, 809 (11th Cir.), cert. denied, 469 U.S. 966, 105 S.Ct. 366, 83 L.Ed.2d 302 (1984). In the case at hand, however, it is not necessary to address whether or not the defendant's request to act as co-counsel waived any earlier asserted right of self-representation because Brooks never asserted such a right, clearly and unequivocally or otherwise.
In the recent case of Bell v. State, 699 So.2d 674 (Fla.1997), Bell argued that the trial court erred in failing to conduct a Faretta inquiry. After reciting the requirement that invocation of the right of self-representation must be clear and unequivocal, the Florida Supreme Court stated the following:
No such declaration to the judge was made in this case. Appellant asked the judge to allow him to assist in his own defense by acting as co-counsel or stand-by counsel along with a court-appointed lawyer. The judge focused upon that request when he made inquiries of appellant, and we find no abuse of discretion in the trial court's denial of the request to act as co-counsel.
Id. The court agreed that the trial court appeared to give too much weight to Bell's legal knowledge, and "made an overstatement that appellant was not competent to serve as co-counsel or counsel even though there was no request to act alone as counsel." *510 Id. This was deemed inconsequential because "the context of the entire hearing concerned appellant's complaints about his counsel's representation and appellant's desire to be more active in assisting his lawyer rather than any potential assertion of the right to self-representation." Because Bell never "request[ed] to act alone as his own counsel," the court held that the trial court was not required to comply with Faretta. Id.
In Cason v. State, 652 So.2d 1191 (Fla. 3d DCA 1995), the Third District reached the same conclusion:
We concede that a full Faretta inquiry was never made to this defendant, however, we have assiduously examined this record and find from first to last the defendant never made an unequivocal request to do other than act as co-counsel with his court-appointed attorney. Consequently, a Faretta hearing was never triggered.... When the record is read as a whole and not as statements taken completely out of context, there is simply no basis for the claim that the defendant wanted to act other than as co-counsel.
Cason clearly stands for the proposition that a request to act as co-counsel is not an affirmative, clear and unequivocal request to forego assistance of counsel and proceed pro se. That the request to act as co-counsel was denied in Cason and granted in the case at bar, therefore, does not distinguish the cases from each other. Only an unequivocal assertion of the right to control and manage one's own defense triggers the Faretta requirements.
It is on this ground that the case at bar, Bell, and Cason are clearly distinguishable from Payne v. State, 642 So.2d 111 (Fla. 1st DCA 1994). Payne did, in fact, unequivocally express his desire to conduct his own defense pro se and discharge counsel. After some inquiry into his legal experience and education, the court denied the request to discharge counsel but appointed the defendant as "co-counsel." The court then "instructed the attorney to do whatever appellant wished him to do." Payne conducted the entire trial and never once requested assistance from appointed counsel. Id. at 112. Otherwise stated, the court effectively granted appellant's request to proceed pro se and appointed Payne's previous attorney as stand-by counsel. Payne managed and conducted his own defense and although the court denominated Payne's position as "co-counsel," it was scarcely that. The court held, and I am in accord that Payne was entitled to a full Faretta hearing because he unequivocally and clearly asked to proceed pro se without the assistance of counsel. In reversing Payne's conviction, a panel of this court reviewed cases from other states and concluded as follows:
We believe, however, the better standard is to require the trial court give the same warning to a defendant who has stand-by counsel as to one who does not. The reason for this conclusion is that at the time the trial court is faced with a request from the defendant to represent himself, the court cannot predict how much of his own defense the defendant will conduct; therefore, the court cannot predict how much of his right to counsel a defendant will waive. The only way for a trial court to ensure that a defendant is adequately informed of the risks he undertakes in representing himself when the defendant proceeds to trial with co-counsel or stand-by counsel is to inform the defendant at the beginning of the trial of the dangers of self-representation.
Clearly, the Payne court was addressing a situation in which the defendant unequivocally asserted his right of self-representation. I acknowledge that to proceed with a full Faretta hearing is required in such an instance whether the court appoints stand-by counsel or not because the defendant is controlling and managing his own defense and is waiving the right to the assistance of counsel. However, to hold Payne applicable in the instant case, would require understanding that case as implicitly holding that a defendant's request to proceed to trial as co-counsel, i.e., to participate (as opposed to control and manage) in his own defense, and still retain his constitutionally guaranteed assistance of counsel constitutes an unequivocal request to proceed pro se without the assistance of counsel. I simply cannot read Payne to so hold.
*511 The way I understand the controlling cases on the issue presented here is that a defendant has no constitutional right to combine self-representation and the assistance of counsel. See McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). Thus, there is no constitutional right for an accused represented by counsel to participate in his own defense as co-counsel. Whether such a request is granted or denied is of no constitutional moment. Granting this hybrid representation arrangement does not suddenly entitle an accused to constitutional protections to which he was not entitled in the first instance.
In truth, this is not a Faretta case at all. Whether and to what extent a defendant represented by counsel is permitted to address the jury at trial is a matter committed to the "sound discretion of the [trial] court." State v. Tait, 387 So.2d 338, 339 (Fla.1980). See McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); U.S. v. Mills, 704 F.2d 1553 (11th Cir.1983), cert. denied, 467 U.S. 1243, 104 S.Ct. 3517, 82 L.Ed.2d 825 (1984). Appellant does not argue here that the trial court abused its discretion in permitting him to participate in his defense. Consequently, this non-issue cannot support a reversal and remand.
When this case is reduced to its essence, the simple fact is that the jury below did not buy into Brooks' "mea culpa, but " defense. He now asks this court to let him off the proverbial hook and give him another shot, hopefully, for him, before a more understanding and sympathetic jury. For the reasons set out above, I can find no reasonable basis for doing so and would decline Brooks' invitation.
To my mind the Supreme Court's holding in Bell and the holding of the majority herein cannot be reconciled. Accordingly, as a service to the bench and bar I would certify the following as a question of great public importance:
WHETHER THE TRIAL COURT MUST CONDUCT A FARETTA INQUIRY, INCLUDING GIVING THE WARNINGS REGARDING THE DANGERS OF SELF-REPRESENTATION, WHEN THE COURT GRANTS A MOTION TO ALLOW A DEFENDANT REPRESENTED BY COUNSEL TO PARTICIPATE IN HIS OWN DEFENSE AS CO-COUNSEL.
NOTES
[1] Having been permitted by the court to give unsworn testimony under the guise of making an opening statement at the beginning of the trial, Brooks did not take the stand in his own behalf, an understandable strategy, perhaps, when one considers that if anyone was ever caught in a criminal act, he was, that he had a criminal history unsavory enough to land him in the career criminal division of the Fourth Judicial Circuit, and that he was hardly a prime candidate to survive unscathed the searching cross-examination under oath about the burglary and his criminal past to which he would surely have been subjected had he testified. The sum and substance of appellant's solo participation in his actual trial is when he delivered his unsworn testimony. The majority opinion characterizes Brooks' participation in his own defense as a "misguided" attempt at self-representation. "Calculated" and "well guided" seem to me to be much more descriptive of Brooks' efforts:

DEFENDANT: Good morning. My name is King Brooks. I am the defendant, co-counsel, in the case.
You know, sometime in our life there will always be something to test our faith, our trust and our belief in God. Sometimes in my life there could be sickness or death, it could be an error or mistake, it could be misunderstanding, it could be some things in our life that we might take for granted.
The criminal allegations and accusations that are lodged against me, the evidence will show intoxication, drugs, sleepless nights and perhaps  and perhaps ignorance.
You know my grandfather told me once when he brought me to the temple to be raised from the dead to a live perpendicular on the square, he said son, when you kneel at the altar before your worshipful master, you must remember the vow that you take before God.
I stand here not to defend my ignorance, not to defend my drug or alcoholic problem, because anyone at anytime in life can be in such a rage of anger in that moment of rage it can blind you, rage, anger can blind you momentarily until you can do some things that you wish you hadn't when you come back into your right mind, anger can do that to you. It's the same thing about drugs and alcohol, drugs and alcohol can do the same thing as anger. You could be so intoxicated when you leave the bar or the restaurant or lounge and momentarily forget where the car is or momentarily forget who you might be or pass a friend and momentarily forget who the friend may be. And then on the way home you're programmed already and you think you're competent but you had a little too much and an accident takes place and you don't remember what you did, the last drink I had, where was it, what bar was I?
The tragedy that happened from the accident, it wasn't intentional, I was drunk. I shouldn't have drank that much, I shouldn't have had that much to drink.
These things happen to human beings in life, it's not to you, maybe somebody close to you or someone that you said O, my goodness, how could he? But just that one drink was too much.
Alcohol mixed with drugs and sleepless nights, it can bring about a fatigue, a mental fatigue that weighs so heavy in your brain until it will cause you to have migraine headaches or maybe blackouts.
The evidence will show that I had too much to drink. And having too much to drink a lot of times you can be so programed until you think that you are acting normal or competent and be acting abnormal or incompetent. It can happen. It did happen, it happened to me.
And I don't justify it, I can't because it happened. I don't justify my being a part of the crime scene because it happened, it happened. I am not trying to justify these things, these things happen. The record will show that these things happened, they did happen. I'm not defending that. I'm saying that I was intoxicated and I was intoxicated, I'm the drug addict. I've been a drug addict for years, I need help, I know I need help. I'm an alcoholic, I know I need help but you don't justify ignorance, you don't justify doing the wrong thing in life. So I don't seek to justify that.
The evidence will show that I had an alcoholic and a drug problem. Thank you for your time and attention.
Other than the record showing that "these things happened," a careful review of the same record reveals that very little of the other evidence promised in Brooks' opening "statement" ever materialized.