# Third District Court of Appeal

## State of Florida

Opinion filed March 2, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-334
Lower Tribunal No. 09-16074
_____

**Simon Silva,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, William Thomas, Judge.

Carlos J. Martinez, Public Defender, and Brian Ellison, Assistant Public Defender, for appellant.

Pamela Jo Bondi, Attorney General, and Joanne Diez, Assistant Attorney General, for appellee.

Before SHEPHERD, LAGOA and SCALES, JJ.

SHEPHERD, J.

Simon Silva appeals his conviction for second-degree murder and attempted second-degree murder. The dispositive issue before us is whether the trial judge's familiarity with the defendant from prior hearings in the case excused his admitted failure to conduct an adequate <u>Faretta</u> hearing before permitting the defendant to represent himself at trial. <u>See</u> <u>Faretta v. California</u>, 422 U.S. 806 (1975).[1] We find that it does not, and reverse and remand this case for a new trial. <u>See</u> <u>Davis v. State</u>, 10 So. 3d 176, 178 (Fla. 5th DCA 2009) ("The failure to conduct an adequate <u>Faretta</u> inquiry into a defendant's waiver of his right to counsel is per se reversible error.") (citation omitted).

The entirety of the <u>Faretta</u> colloquy between the trial judge and the defendant in this case was as follows:

**THE COURT:** Mr. Silva, what would you like to say to the Court, sir?

**MR. SILVA:** Your Honor, I don't know if what I'm about to ask you is - - would be too much, but I would like to play the role of Perry Mason now.

**THE COURT:** You mean, you want to be your own attorney now?

**MR. SILVA:** Yes, your Honor.

**THE COURT:** Mr. Silva, I guess you can be your own attorney, but you don't even speak English. Yeah, but the interpreter would have to translate every single thing that every person said, and then you would have to - -

---

[1] Consistent with <u>Faretta</u>, the Florida Supreme Court has approved Florida Rule of Criminal Procedure 3.111(d)(2)-(3) and a model colloquy, <u>see</u> <u>In re Amendment to Fla. R. Crim. P. 3.111(d)(2)-(3)</u>, 719 So. 2d 873, 876-80 (Fla. 1998), which, if properly administered, insulates a trial court from challenge for failure to satisfy the Sixth Amendment <u>Faretta</u> requirements.

**MR. SILVA:** Your Honor, I really try to do my best. It's going to be my life on the line, sir. I have to do it.

**THE COURT:** No, you don't have to do it. You're doing it because you want to do, and I guess, that's your option. Do you know anything about what you need to do in a court?

**MR. SILVA:** Not exactly, but I was raised in this business.

**THE COURT:** You what?

**MR. SILVA:** Yes, I was raised in this type of environment.

**THE COURT:** Where's his clothes?

**MR. MARINES:** Here, your Honor.

. . . .

**THE COURT:** Where's the interpreter?

I'm going to let him represent himself, and I'll appoint you as stand-by counsel. And I don't intend - - just so that you know, you represent yourself, Mr. Marines is appointed as stand-by counsel. If you stand up there and make an absolute fool out of yourself, that's you. You're making a fool of yourself. If you stand up there and the jurors look at you like you're crazy because you have no idea what you're doing, I'm not here to help you. He's here to help you as your stand-by counsel, and I'm not going to grant you a new trial if - - because you don't know what you are doing. You stand up there, and the jury just convicts because you have no clue as to what you're doing.

With these admonitions, the Court next asked Silva the following question:

**THE COURT:** We're about to continue with jury selection. Would you want to conduct . . . the jury selection, or do you want Mr. Marines to do the jury selection?

**MR. SILVA:** Who is Mr. Marines?[2]

3

**THE COURT:** That's Mr. Marines.

**MR. SILVA:** Yes, let him choose the jury.

After jury selection, Silva cross-examined the three most critical witnesses in the trial – the surviving victim in the case who was shot by Silva during the course of the incident, another eye witness who was an employee of the decedent victim, and a witness who knew Silva and who arrived on the scene shortly after the shooting. Thereafter, Silva permitted his attorney to conduct the remainder of the trial.

Although, Silva's counsel was present during the course of the Faretta hearing conducted by the court, he was, ironically one might think, ethically prohibited from voicing a challenge to the adequacy of the Faretta hearing or ability of his client to represent himself.[3] However, counsel lost no time in raising the issue via a motion for new trial after the jury verdict. At the hearing on the motion, the trial judge conceded that his Faretta inquiry "was woefully inadequate in inquiring of Mr. Silva the types of questions that I think the Third District Court of Appeals and the Supreme Court of Florida has outlined should be asked." Nevertheless, he sought to redeem himself by reference to his multiple other encounters with Silva before trial, including several Nelson hearings,[4] during

---

[2] Remarkably, Mr. Marines had represented Mr. Silva for the past four years.
[3] See R. Regulating Fla. Bar 4-1.2(a) ("[A] lawyer shall abide by a client's decisions concerning the objectives of representation . . . .").
[4] Nelson v. State, 274 So. 2d 256 (Fla. 4th DCA 1973).

4

which Silva complained about the adequacy of his counsel, and Silva's demeanor during the "Stand Your Ground" hearing,[5] conducted by the court at Silva's insistence against the strategic advice of his counsel. Unfortunately, the trial court's post hoc effort to salvage the proceeding from structural reversal was too little too late.

In limited circumstances, a trial judge may determine that a defendant is competent to waive counsel even where the inquiry is insufficient. But in that event, "Faretta and [Rule 3.111(d)(2)-(3)] require that the trial court make a [determination of record sufficient to indicate] 'how the defendant's background, including his age, mental status, and education, affects his competency to waive his right to counsel.'" McGee v. State, 983 So. 2d 1212, 1215 (Fla. 5th DCA 2008) (citing Flowers v. State, 976 So. 2d 665, 666 (Fla. 1st DCA 2008)); see also Davis v. State, 10 So. 3d 176, 178-79 (Fla. 5th DCA 2009) (collecting cases). The trial judge failed to lay a sufficient record in this case, and while Silva was not an ideally cooperative client, the record is silent in regards to important information and data from Silva's background necessary for the trial judge to reasonably conclude that Silva knowingly and intelligently waived his right to counsel for the trial of his case. See Fla. R. Crim. P. 3.111(d)(2)-(3). In fact, the record demonstrates there is ample evidence to the contrary.

---

[5] See § 775.032, Fla. Stat. (2009).

The State maintains that because Silva received hybrid representation, he is not entitled to a <u>Faretta</u> hearing. Neither the Sixth Amendment of the United States Constitution, as it is interpreted by <u>Faretta</u>, nor article I, section 16 of the Florida Constitution guarantee the accused a right to both self-representation and the assistance of counsel. <u>Logan v. State</u>, 846 So. 2d 472, 474 (Fla. 2003). However, even in the case of hybrid representation, "<u>Faretta</u> warnings are required whenever the trial court permits a defendant to undertake a portion of his defense that is a 'core function' of a lawyer." <u>Boyd v. State</u>, 45 So. 3d 557, 559 (Fla. 4th DCA 2010) (citing <u>Brooks v. State</u>, 703 So. 2d 504, 505-06 (Fla. 1st DCA 1997)). Silva represented himself during the cross-examination of three of the State's main witnesses. Cross-examination is no doubt a critical stage of trial. <u>Id.</u> Thus, a <u>Faretta</u> hearing was required to be performed in this case regardless of Silva receiving hybrid representation.

For the foregoing reasons, we find the trial judge abused his discretion by conducting an inadequate <u>Faretta</u> hearing. Therefore, we reverse and remand for a new trial.[6]

Reversed and remanded with directions.

---

[6] Silva's ancillary argument for reversal is based upon the jury verdict form. It is unnecessary for us to address this point. Any inadvertent errors should be corrected on new trial.